**BURNET, Commissioner of Internal Revenue, v. NORTH AMERICAN OIL CONSOLIDATED.**

No. 6315.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1931.

As Modified on Denial of Rehearing.
Sept. 14, 1931.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Prew Savoy and Allin Pierce, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for petitioner.

Herbert W. Clark and Leon de Fremery, both of San Francisco, Cal., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

Petitioner seeks to review a decision of the Board of Tax Appeals with relation to a deficiency tax of respondent for income and profit taxes for the year 1917. The sole question involved is whether or not the sum of $171,972.20 derived from the sale of oil produced on section 2 during the year 1916, impounded in the hands of a receiver appointed by the federal court for that purpose, and retained by him until 1917, when under order of court it was turned over to the respondent, was taxable as income for the year 1917. The land which produced this oil was government land which had been in the possession of the respondent under placer mining claims. The government contended that, as the land had been withdrawn from location by an order of President Taft, the respondent was not entitled to a patent. An action was brought to terminate the respondent's right, and in that action the receiver was appointed. The respondent was a large operating company holding many pieces of property, and this litigation affected only the property in section 2. The trial court determined the matter in favor of the respondent U. S. v. North American Oil Consolidated (D. C.) 242 F. 723. This decision was affirmed by the Circuit Court of Appeals of this circuit (264 F. 336). The case was finally disposed of by the Supreme Court on March 21, 1922, when it issued its mandate dismissing the appeal thereto in pursuance of a stipulation of counsel. 258 U. S. 633, 42 S. Ct. 315, 66 L. Ed. 802. The money thus impounded had been paid over to the respondent after the decision of the District Court in 1917.

The Board of Tax Appeals held, in accordance with the contention of the respondent, that the income impounded by the receiver should have been returned by him as his income for the year 1916. In that regard we quote from the opinion of the Board of Tax Appeals as follows: "The respondent affirmatively alleges that the amount impounded in the hands of the receiver in 1916 and released to petitioner in 1917 was income to the petitioner in the latter year. The respondent's principal argument in support of his claim herein is that petitioner was on the cash receipts and disbursements basis in the years 1916 to 1919, inclusive, and, as the amount here involved was not actually received by the petitioner until 1917 it must be taxable income in that year. We think it immaterial whether petitioner's accounts were kept on the receipts and disbursements basis or some other basis as permitted by section 13 (d) of the Revenue Act of 1916 (39 Stat. 771). The fact is that the income was actually produced in 1916. The sole reason that it did not reach the petitioner in that year was because of the suit by the United States. By reason of that suit a receiver was appointed, who actually received the income, and who should have reported it for taxation. Section 13 (c) of the Revenue Act of 1916; United States v. Chicago & E. I. Ry. Co. (D. C.) 298 F. 779; Forstmann v. Ferguson (D. C.) 17 F.(2d) 659, affirmed (C. C. A.) 25 F.(2d) 47. If the receiver did not report it, that is no sufficient reason for taxing the petitioner on it in a later year. Accordingly, the amount of $171,979.22 received by petitioner in 1917 is not an item of income in that year."

The petitioner contends that section 13, subdivision (c), of the Revenue Act of 1916, 39 Stat. 756, 771, does not apply, for the reason that it is inapplicable to a receiver holding only a part of the property of the taxpayer corporation. This section provides for returns by receivers where they are operating "the property or business of corporations," etc. It is provided that they "shall make returns of net income as and for such corporations, * * * in the same manner and form as such organizations are hereinbefore required to make returns." It provides that the tax should be assessed in the same manner as if assessed directly against the organizations of whose businesses or properties they have custody or control. It will be observed that, as applied to the receiver having possession of the entire property of the corporation, etc., as in the case of receiver in bankruptcy, the statutory provisions with

reference to such taxation are readily applicable, but, where only a portion of the property of the corporation is in the hands of a receiver, it would follow that only a portion of the income of the corporation was in the possession of the receiver, and the tax could not be assessed and collected in the same manner as if assessed directly against the taxpayer, unless for purposes of assessment and collection it was in some fashion combined with the income, if any, received directly by the corporation or in case of loss by the corporation and corresponding deduction was made therefrom. While this consideration does not necessarily determine the proper interpretation of the statute (section 13 [c] supra), it clearly points to the conclusion that section 13 (c) applies only to receivers who are operating the entire property or business of a corporation, etc. The Secretary of the Treasury, soon after the enactment of the statute in 1916, adopted regulations based upon that view of the statute (article 26, par. 181, art. 209). We quote therefrom as follows: "* * * Such receiver, trustee, or assignee stands in the place of the corporate officers and is required for the purpose of this title to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control. The income which he receives on account of the business transacted is the income of the corporation and no matter how such income is applied, it is subject to the tax imposed by this title insofar as it exceeds the deductions or allowances authorized by law."

Later additional regulations were promulgated pursuant to 40 Stat. 1057, 1143, § 1309 (26 USCA § 1245 note): "A receiver who stands in the stead of an individual or corporation must render a return of income and pay the tax for his trust, but a receiver of only part of the property of an individual or corporation need not. * * * A receiver of the rents and profits appointed to hold and operate a mortgaged parcel of real estate, but not in control of all the property or business of the mortgagor, and a receiver in partition proceedings, are not required to render returns of income. In general, statutory receivers and common-law receivers of all the property or business of an individual or corporation must make returns."

Article 622, after providing for returns of income by receivers, concludes as follows: "A receiver in charge of only part of the property of a corporation, however, as a receiver in mortgage foreclosure proceedings involving merely a small portion of its prop-

erty, need not make a return of income. See articles 424 and 547."

Similar provisions were incorporated in the regulations promulgated under later statutes. If in any case it is proper for a receiver to withhold a return of income on the ground that the property in his custody does not constitute all of the property of the taxpayer, it is clear that, where the receiver is appointed because of a controversy over the title to the property which he holds, which is only a part of that owned by the taxpayer, it is pre-eminently a case in which the return should not be made by the receiver who has been appointed for the very purpose of impounding the income to await the determination of the court as to its ownership. If it is to be treated as a part of the income of the owner of the property, the amount of tax thereon would depend upon which one of the two litigants was subsequently determined to be the owner, and this difficulty is particularly marked in the situation presented by the case at bar, where, if the income belonged to the government, it was not subject to tax, whereas, if it belonged to the respondent, the amount of tax thereon would depend upon the income derived by the respondent taxpayer.

We are informed by the brief filed on behalf of the government that the uniform practice of the Treasury Department with relation to returns from receivership has been in accordance with the rules of the Treasury Department as above interpreted, and that under that practice the receiver of a part only of respondent's property as in the case at bar was neither required nor permitted to make such return.

In view of the departmental construction placed upon the statute, which seems to be in' accordance with the intent of Congress, the receiver was not required to make return of this income, but the respondent corporation was required to do so.

It remains to consider whether or not the respondent, who was entitled to the income derived from its property which was impounded by the receiver, was liable for income tax thereon as a part of its income for the year 1917. The petitioner asserts in his brief that respondent made its return upon a cash rather than upon an accrual basis. The returns would indicate this to be true, for it is expressly stated therein that the returns are based upon receipts and disbursements. Respondent, however, takes issue with the petitioner's statement, and points out that the Board of Tax Appeals failed to determine whether or not respondent's returns were made upon a cash or accrual basis. In either view we think that the amount of this income was properly taxed as income for the year when it was received by the respondent. If the returns were made upon a cash basis, it is clearly taxable in the year in which the money was actually received. If, on the other hand, the respondent made its returns upon the accrual basis, as it seems now to contend, it is properly taxable in the year 1917, for it has been held that, where tax returns are made upon the accrual basis, obligations whose validity is a subject of litigation, are not taxable as accrued income. Dodge v. United States, 64 Ct. Cl. 178; Kales v. Woodworth (D. C.) 20 F.(2d) 395; Lucas v. North Texas Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Lucas v. Am. Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538. The respondent, apparently conceding this rule, takes the position that, notwithstanding the fact that it actually received the income in 1917, its right thereto was in litigation until the final decision of the Supreme Court of the United States in 1922, and that therefore the money was not taxable as income until such final determination.

It is said that the Consolidated Tea Co. v. Bowers (D. C.) 19 F.(2d) 382, 384, is directly in point on the proposition that the impounded funds cannot constitute income in 1917, but were reportable as income either in 1916 or 1922. We do not think that this case is in point, for it deals with the question as to whether or not the taxpayer is entitled to deduct as a loss a judgment for $10,000 rendered against it by the lower court in 1919, and affirmed by the appellate court and paid in 1921. The taxpayer in that case claimed the right to deduct the loss in 1919 because at that time it set up a reserve against the amount of the judgment. In that connection the District Court stated: "From a tax income standpoint, both logical and practical, reasons seem to me to support the conclusion that a loss should be deductible, not in the year when the judgment was rendered, but in the year when the claim was adjudicated to be final and definite, or possibly, under certain circumstances, in the year when the claim originated."

We do not think this case is authority for the proposition that money paid to a corporation as a part of its income is not taxable because its right to receive such income is being litigated in the court. The decision of Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, supports the view that we have advanced. In that case Sanford & Brooks were engaged in dredging

for the government. In 1915 they declined to proceed with the work, and brought suit against the government for the amount expended in performance of the contract on the ground that the government had failed to make proper disclosure of the character of the dredging to be done. The Court of Claims awarded a judgment against the government in 1918. This judgment was affirmed by the Supreme Court in 1920 (U. S. v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735), and the judgment was paid by the government in 1920. It was contended by the taxpayer that it was entitled to make return of this amount as income for the years 1913-1916, during which the work was done and money expended, with the result that such expenditures made during those years would offset the income. The Supreme Court held that the income was properly taxable as income for the year 1920, there being no evidence that the taxpayer took advantage of the regulation providing for reporting income on long-term contract basis under treasury regulations, or upon an accrual basis under section 212 (b) (40 Stat. 1064).

Income is ordinarily taxable only when it is received. See, also, decision in Herold v. Mutual Benefit Life Ins. Co. (C. C. A.) 201 F. 918; Maryland Casualty Co. v. U. S., 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Eckert v. Burnet, 51 S. Ct. 373, 75 L. Ed. ——, decided April 13, 1931; Lucas, Commissioner, v. North Texas Oil Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Commissioner v. Garber (C. C. A. 9) 50 F.(2d) 588, decided June 8, 1931.

Order reversed.