**SCHUETTE v. ANDERSON, Collector of Internal Revenue.**

**No. 123.**

Circuit Court of Appeals, Second Circuit.

Feb. 1, 1932.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty. of New York City, of counsel), for appellant.

Gerald Donovan and Sullivan & Donovan, all of New York City (Cornelius J. Sullivan and Raymond D. Thurber, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an action by the plaintiff to recover a part of her income taxes paid for the year 1924. She claims that she should have been allowed as a deduction a loss arising from the sale in 1923 of a plot of over four hundred acres of land in Long Island, New York, because it fell within section 204 (a) of the Revenue Act of 1921 (42 Stat. 231). This section permits the deduction of losses in a previous year resulting "from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business)." The plaintiff's husband, who died in January, 1919, devised the land to her and she had held it, seeking always to find a suitable purchaser. Her activities meanwhile she asserts to be within the section. The Commissioner disallowed the deduction and she paid the deficiency assessed. The cause was tried to a jury of one, and at the end of the evidence each side moved for a verdict, which the judge directed in the plaintiff's favor, from the judgment on which the defendant appeals.

Though there are other questions at issue, the only one which we find it necessary to consider it whether she was carrying on any regular business. The property had originally been acquired as a race-track by a company organized for that purpose, but when the law made betting unlawful, that use became unprofitable, and in 1915 it was bought by a second company, organized to "maintain a speedway * * * for automobile races, athletic contests or any exhibition of skill or speed." Upon it were built a steel grand-

stand, a concrete and wooden race-track, and ancillary buildings, and the company let it out for such exhibitions from time to time, as occasion offered. Apparently the venture was not successful, for the original owner in 1917 foreclosed what we assume to have been a purchase money mortgage, and the plaintiff's husband, who was a large holder of the mortgagor's shares, bought it in at the sale, and held it until his death in January, 1919. What use he put it to during that period does not appear, though perhaps in aid of the verdict we might assume that he let it when he could for exhibitions as the plaintiff did later. At any rate, when she got it, she at once tried to sell it through her agent, but meanwhile during the year 1919, exploited it so far as she could. She succeeded, however, only in leasing it for racing to one lessee for four days, to another for a single day, and for two days to an opera company. Besides this she let it on an unspecified number of days to automobile manufacturers for speed tests at fifty dollars a day. At the end of the year the revenue having been too small to justify further efforts, she dismantled the buildings, but as no satisfactory purchaser was secured until 1923, was forced to keep it unoccupied till that time. The judge thought that her activities in 1919 were within the section, and that, as she was always trying to get rid of it, the business continued until she succeeded.

As we have said, the plaintiff had given authority to her agent and attorney to sell the property as soon as he took charge of her affairs, which was at once upon her husband's death, and though he received many offers, none were satisfactory until some four years later. Meanwhile, and until the attempt proved futile, she naturally wished to get as much revenue as possible out of it, and the only way was to lease it whenever she could for the only purposes to which it was adapted. We may assume arguendo that if the original company had continued the business, though that had dwindled by 1919 to the same extent, it would still be regularly carrying it on. We may similarly assume that if it had in 1920 dismantled the buildings meaning to dispose of the land, though it failed to sell for three years, the business went on even till then. But these are quite different conditions from those we have before us; and the difference is decisive. It by no means follows that the section makes the taxpayer's objective activities the single test, regardless of his purposes. The phrase is in colloquial speech and we cannot disregard its connotations as though it were drawn from an artificial terminology deliberately devised to avoid any. The law seldom speaks with such a tongue, and relies upon the divination of its meaning from the outlines of its purpose.

This lady wanted to sell her land, and what she did meanwhile was to stop her loss so far as she could. She had only one way to do that while the buildings stood, and, though what she did may have been indistinguishable from the last quivers of an expiring business, once begun as such, she was not for that reason regularly carrying one on. That would invert the meaning of the section, which allows the loss as an incident to the business, and does not contemplate the business as an incident to the loss. Nor would it make any difference though we were to assume that her husband had done as much as she during the two years or less that he held it. We have no right to assume that when he bought it, he meant to continue the old business. He was largely interested as mortgagor, and it was at least as likely that he bought it to protect that interest as to keep on in a venture which had once failed. The foreclosure may have marked the end and the rest been salvage. If so, activities before the account was cleared were not in our judgment what the law intended. It spoke of a business operated on its own account, not of efforts ancillary to the final disposal of a bad investment. On the record as it stands, we think that the defendant should have had a verdict.

Judgment reversed; new trial ordered.