**In re WIENER et al.**
**No. 12640.**

District Court, E. D. Pennsylvania.
July 15, 1932.

J. A. Keough (of Levi & Mandel), of Philadelphia, Pa., for review.

J. I. Weinstein (of Aarons, Weinstein, Stone & Goldhaber), of Philadelphia, Pa., contra.

KIRKPATRICK, District Judge.

The very complete and careful report of the referee states the case, and his findings of fact are confirmed and adopted. The surcharge of the trustee in the amount of $14,003.20 arising out of his attempt to defraud the estate of that amount in connection with the sale of the assets is fully warranted, and, as a matter of fact, is acquiesced in by him.

The only question, therefore, before the court is the propriety of the second part of the referee's order by which the trustee is surcharged in the additional amount of $11,174.59, representing loss which the referee found that the estate suffered by reason of the trustee's failure to complete certain merchandise.

The referee states the question involved as follows: " * * * whether the Trustee was obliged under penalty of surcharge, to expend the sum of $11,840 to complete the unfinished merchandise under the circumstances as developed in this case, with or without an order from the Bankruptcy Court."

The bankrupts were manufacturers of men's clothing. When the trustee (then receiver) took over the plant, he found approximately 2,400 unfinished garments in various stages of completion, representing possibly 20 per cent. in value of the merchandise on hand. Upon his own petition an order was made by which "the Receiver or the Trustee is authorized to contract for the completion of these unfinished garments for a price of approximately $6,000."

As a matter of fact, instead of $6,000, the minimum cost of completing the garments would have been nearly $12,000. Consequently it was impossible for him to carry out the work within the terms of his authorization.

However, instead of trying to ascertain the cost and getting a new authorization to complete the work at a higher figure or at least laying the facts before the creditors for their action, the trustee simply let the whole matter drop. The reason for this was that within a short time after the order was made, he was engaged in working out the details of a fraudulent conspiracy which involved a sale of all the assets of the estate at less than their value.

An order of sale was obtained and the goods sold. The creditors must have known that the trustee was not completing the unfinished merchandise and that the sale would end his power to do so. No one seems to have raised any question about it.

Note: The chronology is of value in appraising the whole situation and is as follows:

On January 23d the trustee petitioned for leave to complete the garments in question. No action was taken on that day, in view of a pending offer of composition. On February 27th, the order authorizing completion of the garments was made, but dated March 4th to await action on the composition offer.

On March 5th the composition order still pending and undisposed of, counsel for the

trustee announced that he had prepared a petition for leave to sell all the assets of the bankrupt at private sale. He was advised that he would have to give ten days notice.

On March 11th, the composition order was rejected by a vote of the creditors.

On April 21st, the trustee's petition for private sale of all the assets was brought before the creditors at a meeting specially fixed for that purpose, after ten days notice to all of the creditors. There being no objection, the sale took place on that day.

Subsequently, the trustee's fraud was uncovered and he has been surcharged by the amount which the estate lost through it. The scheme was to remit some $14,000 of the purchase price to the purchaser, who was acting in concert with the trustee, by means of a fictitious rebate for lost or undelivered goods. However, the referee has found as a fact that the price obtained at the sale (and which with the surcharge will come in full to the estate) was a fair and reasonable price for the merchandise as of the date of the sale.

■ Neither as receiver nor as trustee was the trustee required or empowered, by virtue of his appointment, to conduct the business of the bankrupt.

While the order to complete was in form an authorization only, it may be treated for all purposes of this decision as though it were a positive direction, especially since the trustee's failure to carry it out was not the result of any bona fide exercise of discretion on his part. The fact remains, however, that it limited the trustee to an expenditure of $6,000 and could not have been carried out as made. The referee states that he would have authorized the increased expenditure necessary had he been asked to do so, but it is by no means certain that the creditors would have preferred such action to a prompt sale of the assets of the estate at "a fair and reasonable price," which is what they got.

■ At any rate, the trustee is not in the position of having refused to obey a specific order of the court. Rather, his position is that of having failed to apply for a grant or extension of extraordinary power to spend money in doing something which would probably have been beneficial to the estate but for which the expenditure had not been ordered. Nor can it be said with certainty that the expenditure would have been ordered. Granted the worst possible motives, I still do not think that his failure to act can be made a ground of surcharge. I find no reported decisions going to that extent.

The difficulties which might arise in the administration of an estate, were the rule followed by the referee to be adopted here, may be seen by stating a possible case by way of illustration. Suppose the property which the trustee takes over consists of a house which the owner or builder had intended to complete by the addition of a garage. The trustee does not ask authority to build the garage but sells the house as it stands for a fair price. Subsequently, creditors are able to demonstrate conclusively that had the trustee expended, say $2,000 for the construction of a garage, the house would have brought at least $5,000 more. Certainly it would be unjust and unreasonable to surcharge the trustee for failing to ask for authorization to make the expenditure. Yet it seems to me that such surcharge would be the logical consequence of the referee's orders, the only difference being that in the illustration the trustee fails to ask for any power, whereas in the case at hand, having been granted a power which he could not exercise, he failed to ask for an extension of it which would double the expenditure actually authorized. This, of course, is a distinction without a difference.

■ The point is that the duties of a trustee in bankruptcy are to collect, preserve, and liquidate the assets of an estate. While in exceptional cases he may be granted special powers to make expenditures in order to enhance the value of the assets, ordinarily he has no authority and is under no duty to do so. To hold him to such duty, or even to a duty to ask for authority under penalty of such a surcharge, it seems to me, would be wholly unwarranted and a perversion of the theory of administration of bankrupt estates prescribed by the Bankruptcy Act (11 USCA).

Having placed this decision upon the ground that there is no duty upon a trustee in bankruptcy under ordinary circumstances to ask for extraordinary power to spend money to enhance the value of the estate, it follows that his motive in failing to do so is immaterial. Whether he is guilty of actual fraud or merely lacking in energy or has exercised an honest discretion, the result is the same. If his failure to move is due to his participation in a fraudulent scheme by which the estate loses money, he should be surcharged with that loss, as has been done in this case; but that should not involve a further surcharge for failure to do that as to which he had no duty.

There are two other matters which remain to be considered.

First. While not necessary to this decision, it may be pointed out that this surcharge is really based upon anticipated profits not realized. It is not the case of spending money to complete a contract which the bankrupt has on hand and is partly executed. There was no contract for the sale of the finished suits after their completion and no evidence that any one would have bought them, beyond the fact that they had a certain market value.

Second. It may be true that no technical estoppel can be raised against the creditors, because it does not definitely appear that the order of sale which was authorized was the cause of the trustee's failure to ask for additional authority to spend money to complete the garments. Nevertheless, there certainly is a large measure of acquiescence to be charged against them. The slightest inquiry at the time that the sale was authorized would have revealed that the work of completion of the garments had not been begun, and of course the order of sale put an end to the possibility of carrying out the former order of completion. Possibly such inquiry was made. Were it necessary, I would be disposed to deny the surcharge of the trustee upon this ground alone, but I prefer to place it upon the broader ground stated in the foregoing opinion.

So much of the orders of the referee as directs that the receiver be surcharged in the sum of $11,174.59 is reversed. The balance of the order is affirmed, and the referee is directed to settle against the trustee such costs and fees and miscellaneous items of expense as were incurred by reason of his misconduct and are legally chargeable against him.