**In re OWL DRUG CO.**

**No. 480.**

District Court, D. Nevada,

September 8, 1937.

E. P. Carville, U. S. Atty., of Reno, Nev.

Thatcher & Woodburn, of Reno, Nev., and Clarence A. Shuey and Grant H. Wren, both of San Francisco, Cal., for trustee, George K. Edler.

YANKWICH, District Judge.

The Owl Drug Company, a Nevada corporation, was adjudicated a bankrupt, upon a voluntary petition, on October 10, 1932. On November 2, 1932, George K. Edler was appointed trustee, qualifying on November 28, 1932. He is still so acting. The bankrupt, prior to bankruptcy, operated a chain of retail drug stores in the States of California, Washington, Oregon, Nevada, and Utah. The business of these stores was taken over by the trustee, who conducted them for a time. Under a court order, the trustee sold the business and all its assets, as a going concern, before 1935. The moneys realized from the sale were deposited in various banking institutions, to abide the determination of the validity of the claims filed in the estate. For the year 1935, the moneys earned $9,911.91 as interest. On March 16, 1936, the trustee filed an income tax return with the Collector of Internal Revenue at Reno, Nevada. The sum of $9,911.91 was shown as income, and deductions of $5,262.12 were claimed for administrative expenses during the year and expenditures for printing and stationery, and California sales tax on printing kodak films—both incurred while the trustee was conducting the business of the bankrupt. The trustee paid a tax of $639.35. Contending that the deductions were improper, the Government claims an additional tax of $723.54.

Two questions are up for determination: (1) Was interest on the money received from the sale taxable income? And (2) were the deductions proper?

The problem involved in the taxability of the interest depends for its solution upon the interpretation to be placed upon sections 22 and 52 of the Revenue Act of 1934 (48 Stat. 680, ch. 277 [26 U.S.C.A. §§ 22, 52]). Section 22 reads:

"§ 22. *Gross income.*

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

In defining the word "income" in tax statutes enacted under the Sixteenth Amendment to the Constitution, the criterion adopted by the courts has been "the commonly understood meaning of the

term." Merchants' Loan & Trust Co. v. Smietanka (1921) 255 U.S. 509, 519, 41 S. Ct. 386, 388, 65 L.Ed. 751, 15 A.L.R. 1305. This has been called the "man on the street" concept of what income is. Paul & Mertens, Law of Federal Income Taxation, 5.02–5.03. "Income" is all "gain derived from capital, from labor, or from both." Stratton's Independence v. Howbert (1913) 231 U.S. 399, 415, 34 S.Ct. 136, 140, 58 L.Ed. 285. In Eisner v. Macomber (1920) 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570, the court amplified this definition:

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain', which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived—from—capital'; 'the gain—derived—from—capital,' etc. Here we have the essential matter: not again accruing to capital, not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal—that is income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amendment—'incomes, from whatever source derived'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution." (Italics added.)

And see United States v. Phellis (1921) 257 U.S. 156, 169, 42 S.Ct. 63, 65, 66 L.Ed. 180.

■■■■ Interest on money is the fruit of capital—the price paid for its use. It is, therefore, gain derived from capital. Consequently it is income. Income may result from hiring out money as from hiring out persons or things.[1]

Interest has always been treated as income under the practice of the Internal Revenue Department. The official forms for returns provide places where "interest received" is to be reported as income and "interest paid" be claimed as a deduction.

This much is obvious.

■■■■ However, section 52 of the Revenue Act of 1934 (26 U.S.C.A. § 52) provided, in part: "Every corporation subject to taxation under this title [chapter] shall make a return. * * * In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control." (Italics added.) Thus, while every corporation subject to taxation must make a return, the return is required of receivers, trustees in bankruptcy, and assignees of corporations, only when they are operating the property or business of the corporation. The effect of an enactment of this character is stated in Paul & Mertens, op.cit., § 39.29: "Receivers, trustees in bankruptcy, and assignees operating the property or business of corporations are required to file returns in the same manner and form as corporations are required to make returns. Whether or not there is such operation is determined by the facts in the particular case. The statute and regulations make a distinction between receivers operating all the property or business of an individual or corporation, and receivers in possession of only part of such property or business. The former type of receiver is required to file a return, the latter is not." And thus the Board of Tax Appeals: "The effect of this section is that receivers, trustees in bankruptcy or assignees who are operating the property or business of corporations 'shall make returns for such corporations.'" Trustees of Gonzolus Creek Oil Co. (Dissolved), 12 B.T.A. 310, 322.

The return is obligatory when the trustee continues the bankrupt's business. "Where receivers or trustees continue the

---

[1] I use the word "hire" here in its secondary sense, as President Calvin Coolidge did once. Asked whether the allied nations, engaged in the World War, should repay the loans made to them by the United States, he answered: "They hired the money, didn't they?"

*business* of a bankrupt any income thus earned is taxable under the various federal income tax laws. *But where they merely marshal and distribute the assets of the insolvent, there is no income, and hence no income tax is payable.*" 6 Remington on Bankruptcy (1923) § 2978 (Italics added.) And see Gilbert's Collier on Bankruptcy [4th Ed. (1937)] § 1297.

■ The trustee must operate all the property of the bankrupt. Burnet v. North American Oil Consol. (C.C.A.) 50 F.(2d) 752; Trojan Oil Co. (1932) 26 B.T.A. 659; Commissioner v. Owens (C.C.A. 10, 1935) 78 F.(2d) 768. When he does, the income is, in truth, that of the corporation. He makes the return "for the corporation." However, as under the Bankruptcy Act the property of the bankrupt vests in the trustee, the Supreme Court has held that the income is not the income of the bankrupt corporation, but "*of the trustee, and was subject to income and excess profits tax only if the statutes authorized the assessment of the tax against him.*" Reinecke v. Gardner (1928) 277 U.S. 239, 241, 48 S. Ct. 472, 473, 72 L.Ed. 866. (Italics added)

Prior to 1916, no such provision existed in the revenue acts. And courts, on the basis of the principle stated, in Reinecke v. Gardner, supra, held uniformly that receivers operating the property of corporations were not subject to this tax. See Pennsylvania Steel Co. v. New York City Ry. Co. (C.C.A. 2, 1912) 198 F. 774; Scott v. Western Pacific Ry. Co. (C.C.A. 9, 1917) 246 F. 545; United States v. Whitridge (1913) 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159.

Since 1916 (39 Stat. 756) the yearly revenue acts have contained provisions identical with the one under consideration. Their object is to reach a new source of income taxation, not reached before. But income from that source is not available, unless all the conditions imposed by the section coexist. The most fundamental one is that the receiver, trustee in bankruptcy, or assignee must be "operating the property or business" of a corporation, and all of it.

■ To "operate" means *to put into, or to continue in operation or activity, to manage, to conduct, to carry out or through.* This is both the ordinary and the legal definition of the word. See Webster's New International Dictionary; 6 Words and Phrases, First Series (1904) pp. 4989 et seq.; 3 Words and Phrases, Second Series (1914) pp. 743 et seq.; 5 Words and Phrases, Third Series (1929) pp. 629 et seq.; 2 Words and Phrases, Fourth Series (1933) pp. 864 et seq. The new Shorter Oxford English Dictionary defines it as follows: "To direct the working of, to manage, *conduct, work* (a railway, business, etc.); to carry out, direct to an end (an undertaking etc.; chiefly U.S. 1880." Volume II, p. 1374.

The operation of a business implies its conduct and management not sporadically, but continuously over a definite period of time, with one aim—*profit making.* Repeatedly, when deductions have been claimed by a taxpayer for losses resulting from the claimed "operation" of a trade or business during the taxable year, under the provisions of the various revenue statutes, allowing such deductions, the courts have held that the requirement of continuity and assiduity had to be satisfied. See Bedell v. Commissioner of Internal Revenue (C.C.A. 2, 1929) 30 F.(2d) 622; Schuette v. Anderson (C.C.A. 2, 1932) 55 F.(2d) 902. And see State of Iowa ex rel. Ben. J. Gibson, Atty. Gen., Plaintiff, v. American Bonding & Casualty Co., Defendant, United States of America, Claimant (D.C.Iowa, in and for Woodbury County, Sept. 15, 1936, opinion by A. O. Wakefield, Judge, not reported).

■ The business of a corporation is "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Co. (1911) 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

■ Said the court in Von Baumbach v. Sargent Land Co. (1917) 242 U.S. 503, 517, 37 S.Ct. 201, 204, 61 L.Ed. 460: "It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and *one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes.*" (Italics added.)

■ The business of the bankrupt here, before the bankruptcy, was the operation of drug stores in several western states.

After the bankruptcy, the trustee continued to operate the stores for a while. Then he sold them. When he did, *the business of the bankrupt was liquidated.* The only property in the hands of the trustee was the money received from the sale. This he was holding, subject to bankruptcy administration. While he operated the drug stores, his income was clearly *income from operation.* After the sale, the interest received from the deposit of the money in various banks was earned, not by the bankrupt's business, but by the money into which the business had been transmuted through the sale. In holding the money, the trustee was "not pursuing the ends for which the corporation was organized." See Edwards v. Chile Copper Co. (1926) 270 U.S. 452, 455, 46 S.Ct. 345, 346, 70 L.Ed. 678. It is true that if a trustee were to take over a bank, a trust company, an investment house, or some other concern which engages chiefly in loaning money, or if the trustee in an estate, the liquidation of which extended over a period of years, invested the funds of the bankrupt in promissory notes or securities, the interest or gain thus obtained *might* be considered income. This was the situation in State of Iowa ex rel. Gibson v. American Bonding & Casualty Co., supra—involving a bonding and casualty company, the funds of which the trustee reinvested—upon which the Government relies. But the lending of money or putting it out at interest *was not* the business of the bankrupt here, or incidental to it. Its business was *the operation of drug stores.* Their sale liquidated the business and terminated the "operation" of the trustee. There remained in his hands money representing the purchase price deposited under order of the court in banks to abide the distribution of the estate. *Granted that interest on this money is a gain, it is not a gain derived from the operation of the business or the property of the bankrupt.* See Berhard O. Kearney (1934) 31 B.T.A. 935. Courts, which have had occasion to interpret enactments of this character, support this conclusion. In re Heller, Hirsh & Co. (C.C.A. 2, 1919) 258 F. 208, 209, the trustee of a bankrupt corporation received funds from a compromise made by him with a foreign corporation of a claim for nonpayment of salary and commissions. As the trustee was not carrying on the business of the corporation, the court held that it was not taxable income, saying: "We

are quite clear that under section 13(c) of the act of 1916 (Comp.St. § 6336m [39 Stat. 770]) *only net income earned by a trustee while operating the business of a bankrupt corporation is taxable."* (Italics added.) This decision was followed in Pennsylvania Cement Co. v. Bradley Construction Co. (D.C.N.Y.1920) 274 F. 1003, 1007. There, the receiver of a contracting company had a large sum of money on hand, derived from the payment of a judgment recovered by him in an action against the City of New York. The liquidation of the claims against the estate had progressed so satisfactorily that, in the opinion of the receiver, a dividend might be warranted. However, the United States was making a large claim in an unnamed sum for income tax during the receivership. The receiver sought instructions. The court instructed him not to declare a dividend, saying:

"There has been a great deal of judicial juggling with such words as 'due' and 'payable,' and in a certain inchoate sense an income tax is due as soon as there is an income; but the tax is 'solvendum in futuro,' and it becomes payable only when the solution or assessment is accomplished. A fiduciary who hastened distribution before the due date of a tax, and then said, I have nothing to pay with, would, in my judgment, be personally responsible, and any court which facilitates such a distribution would be chargeable with judicial wrongdoing.

"There is another inquiry germane to this case which seems to me to be answered for this circuit by In re Heller, Hirsh & Co., 258 F. 208, 169 C.C.A. 276, viz.: If there is any income taxable or otherwise, whose is it? Is it the income of the corporation or the income of the receivers? In the case cited it was held that under the act of 1916 (section 13c [Comp. St. § 6336m, 39 Stat. 770]) only net income earned by a 'trustee while operating the business of a bankrupt corporation' was taxable. In other words, if this money is income at all, *it is the receivers' income, and not that of the corporation."* (Italics added.)

This interpretation accords also with the aim of the section, as disclosed by its legislative history, and its purpose to tax "not the income of the bankrupt corporation but of the trustee." Reinecke v. Gardner, supra, 277 U.S. 239, at page 241, 48 S.Ct. 472, 473, 72 L.Ed. 866; Trustees of

Gonzolus Creek Oil Co., supra; see Benton Wilson (1935) 33 B.T.A. p. 649.[2]

Here the operations of the trustee having terminated, and the income being derived not from operation but from interest on the money which the sale of the business and operative properties of the concern had brought, the trustee had no taxable income. In requiring trustees in bankruptcy and other fiduciaries to make returns, the Congress has seen fit to limit the duty so imposed to the instances where they operate the property or business of the bankrupt. This is a specific limitation. We must give effect to it. To read into it the unlimited definition of "income" applying in the case of persons other than the named fiduciaries, is to destroy the limitation. No tax can be imposed by implication, or by judicial construction. We are bidden to interpret tax statutes strictly against the Government, and to resolve in favor of the taxpayer doubts as to the fact of the imposition of a tax, and the amount of it. See Gould v. Gould (1917) 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; Crooks v. Harrelson (1930) 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; Cole v. Commissioner (C.C.A. 9, 1935) 81 F.(2d) 485, 487, 104 A.L.R. 420; Commissioner v. Bryn Mawr Trust Co. (C.C.A. 3, 1936) 87 F.(2d) 607, 611. To do away with the limitation would mean going in the face of this salutary policy.

Hence our conclusion that the interest on bank deposits received by the trustee for the year 1935 was not taxable income under the Revenue Act of 1934.

This makes it unnecessary to pass on the claimed deductions.

The Government's claim is without right. It is disallowed.

---

[2] There is nothing to the contrary in Burnet v. North American Oil Consolidated (C.C.A.1931) 50 F.(2d) 752. As appears from it and from the opinion of the Supreme Court on certiorari, [(1932) 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197], the question involved there was whether money derived from the sale of oil impounded in the hands of a receiver was taxable while it was retained by him. *The receiver was operating the property*, as appears from the opinion of the Supreme Court: "The money was paid to the company under the following circumstances: Among many properties operated by it in 1916 was a section of oil land, the legal title to which stood in the name of the United States. Prior to that year, the government, claiming also the beneficial ownership, had instituted a suit to oust the company from possession; and on February 2, 1916, *it secured the appointment of a receiver to operate the property, or supervise its operations, and to hold the net income thereof.* The money paid to the company in 1917 represented the net profits which had been earned from that property in 1916 during the receivership. The money was paid to the receiver as earned." North American Oil Consol. v. Burnet, 286 U.S. 417, 419, at page 420, 52 S.Ct. 613, 614, 76 L.Ed. 1197. Obviously, the court was dealing with an *operating receivership*. The decision was that the money was not taxable as income in the hands of the receiver because he operated *part of the property only*. The statement of Mr. Justice Wilbur *arguendo*, that all the provisions relating to returns by corporations apply to receivers, does not determine the question here. *No such question was before the court.*

Nor does United States v. Chicago & E. & I. Ry. Co. (D.C.Ill.1924) 298 F. 779, help. All it decided was that the income from the business of a railroad operated by the court, through a receiver, is subject to an income tax. The general statement that the definition of "total income" applies to receiverships is not an authoritative determination of the problem with which we are dealing here. And, as in Burnet v. North American Oil Consolidated, supra, the court was dealing with an *operating receivership.*