## In re RICHTER.

District Court, S. D. New York.
April 29, 1941.

John E. Joyce, of New York City, Referee in Bankruptcy.

Hyman Eller, of Brooklyn, N. Y., for Trustee.

Schneider & Arzt, of New York City (Michael Berman, of New York City, of counsel), for respondent.

Barshay, Frankel & Rothstein, of New York City, for Fred W. Hinrichs, Inc.

KNOX, District Judge.

The trustee in bankruptcy has petitioned for review of an order by the Referee denying a motion to compel the turnover by four creditors of certain monies paid them

by the bankrupt subsequent to the filing of the petition.

Fannie Richter was the proprietress of a bakery and restaurant. On August 9, 1940, she filed a voluntary petition, and, on the same day, was adjudicated a bankrupt. No receiver was appointed and the trustee was not elected until October 10, 1940. During the two months intervening between the filing date and the election of a trustee, the bankrupt continued in possession of the bakery, and continued to operate the business.

At the time of filing her petition, the bankrupt had no quick assets. Her equity in the baker's tools, furniture and fixtures, with which the trade was carried on, is stated to be worthless, inasmuch as the debts represented by the two chattel mortgages upon them are greatly in excess of their value.

When the bankrupt filed her petition, she was indebted, among others, to the four respondents in this proceeding. They are Fred W. Hinrichs, Inc., who supplied the bankrupt with paper bags and boxes, in the sum of $26.93; William G. Bullock, for flour, in the sum of $150.75; Consolidated Edison Company, for gas and electricity, $36.27; and J. Sausville Sons, Inc., who supplied her with other ingredients required in making bread and cake, in the sum of $439. These several sums were for merchandise or services rendered prior to August 9th, and each of them was a dischargeable debt. Sausville was not listed in the schedules, but the referee has found that this creditor had actual notice of the bankruptcy by August 17th. The others were listed and received notice of the proceedings.

As previously stated, the bankrupt continued in possession of the store and ran the bakery. Upon the hearing before the Referee, Mr. Sausville testified that he refused to deliver goods to the bankrupt unless the claim of his concern was paid. He then stated (referring to the bankrupt's response): "She said, on every bill that I send up, she would pay me an old bill." It was established that, thereafter, Sausville delivered new materials to her on that basis. The result was that before the trustee took over, the bankrupt had liquidated the entire old claim of Sausville, amounting to $438.77. During the period she created a new debt for the later deliveries of $460.41.

The Referee found that the payments made by the bankrupt were from her daily cash receipts. He also agreed with Sausville's contentions that the monies he received were proceeds arising from the sale of bread, cake and other foods created in part out of the materials, furnished under his arrangement with the bankrupt subsequent to August 9th, except for a small sum said to represent goods on hand on that day.

The Referee ruled that the monies so paid were neither property in existence at the time the petition was filed, nor were they the proceeds of such assets. On the contrary, it was held that they were the proceeds of after-acquired property, and therefore the trustee could not recover the same.

A similar conclusion was reached respecting the other claims, inasmuch as they, too, were paid out of the bankrupt's daily cash receipts following the bankruptcy.

█ In my opinion, the Referee's conclusion cannot stand. The operation of the business by the bankrupt during the period involved was without the knowledge or authority of this court. Her adjudication had the effect of placing all her assets—encumbered or otherwise—in custodia legis. In the absence of a receiver she held the same as a trustee for the benefit of her creditors, and subject to the orders of this court.

█ The continued operation of a bankrupt's business is a matter within the discretion of the court. Bankruptcy Act § 2, sub. a(5), 11 U.S.C.A. § 11, sub. a(5). By virtue of that section, the court has the power, in a proper case, to direct the continuance of a business for limited periods by a receiver or trustee. The purpose of any such operation, manifestly, is to preserve a going business with the prospect of its sale, as such, to the greater advantage of the creditors. In 1 Collier on Bankruptcy, 14th Ed., Section 2.34, it is stated: "The chief function of the Act is to distribute the bankrupt's assets pro rata and to marshal those assets to that end. Yet occasion will often arise where a going business may be preserved and advantageously sold by keeping it alive under the management of an officer of the court." Collier then continues (ibid): "The receiver or trustee is not empowered merely by virtue of his appointment, to conduct the business of the bankrupt * * * in the absence of

specific authority to operate the business, the receiver has no such authority * * *." And see cases cited therein.

Had a receiver been appointed, he would have had no license to operate the business without prior permission. Matter of Wiener, D.C., 7 F.Supp. 691, affirmed, 3 Cir., 72 F.2d 1010.

Clearly, I think, the bankrupt, having voluntarily placed herself in the jurisdiction of this court, was without authority thereafter to continue to deal with her estate as before, to create new obligations, and pay old ones out of the use of such assets as she possessed. Under no circumstances could she have greater powers than those of a receiver or trustee. Her unauthorized actions should not be permitted to effect the estate she relinquished on August 9, 1940.

If it be supposed that a receiver had been duly appointed in this case, and been authorized to operate the business, the ordinary expenses of such operation would be administration expenses, and would include the cost of raw materials necessary for such operation. The income derived from such operation would be income of the receiver. Reinecke v. Gardner, 277 U. S. 239, 241, 48 S.Ct. 472, 72 L.Ed. 866; In re Owl Drug Company, D.C., 21 F.Supp. 907, 911.

Such income would become part of the general fund to be administered in the proceeding, to be used, first for the payment of administration expenses in the order of their priorities, and any remaining balance, to swell the fund for the payment of creditors.

Conversely, if a receiver were without direction to operate the business, but had done so and suffered a loss, the estate would not be chargeable with such loss. Matter of Harley, 10 A.B.R.,N.S., 687. See also Matter of Kaufman, D.C., 21 F.2d 799, and 42 Yale Law Journal 441.

With these conceptions in mind, it is impossible to formulate a theory which would justify the retention by these creditors of the funds paid them. Whether the funds involved were in existence at the time of bankruptcy or not is immaterial. They were created by the unauthorized operation of the business. Each of these creditors had actual knowledge of the proceedings in time to file claims. Their right was to share pro rata with other general creditors.

Under the facts disclosed, these creditors were charged with knowledge of the inhibitions which the law placed upon the bankrupt. By what was done, these creditors received preferences over others within their own class, and these they cannot retain.

Concession may freely be made that, after petition filed, a bankrupt may, out of assets independently acquired, select certain creditors and prefer them. This would be so if the bankrupt had set herself up in a new business, and with her own tools and fixtures had acquired new money out of new materials furnished her by her creditors. She could then do as she pleased with such money. Instead of doing that, this bankrupt continued the old business, using the facilities and good will which were no longer hers to use. These respondents, having knowledge of the circumstances, continued to deal with her, to their peril. To permit these transactions to stand would frustrate the intent and purpose of the Bankruptcy Act.

As has been stated in one of the briefs, this is a court of equity, Harris v. Shafer & Company, 8 Cir., 10 F.2d 351, and respondents should not reap the advantages of these unauthorized acts. The petition for review is granted and the order of the Referee, insofar as it denied the trustee's motion, is reversed. The creditors are directed to pay over the sums found to have been paid them, and they are relegated to their general claims against the estate. Inasmuch as the new debts, contracted after August 9th, were unauthorized, they are not administration expenses to be borne by the estate; are not dischargeable and as to them, the creditors must look for payment out of the bankrupt's new estate.

In view of the above, it is unnecessary to comment on the particular errors assigned.

Settle order.