JOS. CAPPS, Inc., LIMITED, v.
UNITED STATES.

No. 8062.

United States District Court
S. D. California, Central Division.

June 28, 1949.

James M. Carter, United States Attorney, E. H. Mitchell, Assistant United States Attorney, Eugene Harpole, Los Angeles, Cal., Robert D. Scott and James D. Pettus, Special Attorneys Bureau of Internal Revenue, Los Angeles, Cal., Eugene Harpole, Los Angeles, Cal., for defendant.

Hortense Stahl, Beverly Hills, Cal., for plaintiff.

YANKWICH, District Judge.

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the plaintiff as prayed for in the complaint. The amount to be computed by counsel in accordance with Rule 7(h). Findings and Judgment

to be prepared by counsel for the plaintiff, unless parties agree that the stipulation of facts shall stand in lieu of findings. (See Appendices A and B, below).

### Comment

There is no dispute about the facts. (See Stipulation, Appendix A.) I am of the view that the case is governed by the principles laid down by the United States Court of Appeals for the Fifth Circuit in United States v. Kingman, 1948, 170 F.2d 408, and Wier Long Leaf Lumber Company v. Commissioner, 5 Cir., 1949, 173 F.2d 549. I see no contradiction between these two rulings. There was no liquidation in this case, in fact or in contemplation. Nor was there a complete cessation of business activities for the purpose of avoiding taxation. Clearly, the company, finding it difficult to carry on its main activities, due to scarcity of materials, transferred some of its stock in trade to its chief stockholder who carried on a portion of its business. Thereafter, its chief business consisted of lending its funds for construction.

It is true that the mere lending of money, at times, may imply cessation of business. This is especially true when a corporation is liquidating and carries on no other business than that of drawing interest on the money which it has secured from the sale or other disposition of its business. See In re Owl Drug Company, D.C.Nev.1937, 21 F.Supp. 907. However, here there is nothing to show that any steps were taken to dissolve the corporation. On the contrary, it continued to pay its annual license tax and perform all its corporate functions, except that it curtailed its activities in the field of plumbing contracting. There being no charge of fraud, and it not appearing that the curtailment of activities was motivated by any other cause than the scarcity of materials, the corporation cannot be treated as a nonexisting entity or as an entity about to go out of existence, in order to deprive it of the benefits of the unused carry-back for the entire fiscal year.

Hence the ruling above made.

### Appendix A.
### Stipulation of Facts

Plaintiff and defendant in the above entitled cause hereby Stipulate and Agree to the facts herein set forth and agree that the cause shall be submitted upon such stipulated facts, the admissions in the answer, and such argument as shall be offered in connection therewith. The execution and filing of this stipulation shall not preclude either part from offering such other and further evidence as is not inconsistent therewith.

### I

Plaintiff is, and at all times in question was, a corporation organized under the laws of the State of California for the purpose of conducting a plumbing contracting business. Plaintiff was organized December 18, 1929; its principal place of business is located at South Gate, California. At all times in question the capital stock of the plaintiff was owned by Joseph Capps and his wife.

### II

From the date of its organization until January 31, 1944, plaintiff was engaged in the business of installing plumbing equipment. During the early part of the war, it became increasingly difficult for plaintiff to continue business activities in this line. On January 31, 1944, plaintiff sold to Joseph Capps, doing business as South Gate Pipe and Supply Company, all of plaintiff's inventory assets for the sum of $27,065.90. Since January 31, 1944, the plaintiff corporation has not engaged in either the retail or wholesale plumbing business. On January 18, 1944, Joseph Capps started South Gate Pipe and Supply Company, all of plaintiff's inventory assets for the sum of $27,065.90. Since January 31, 1944, the plaintiff corporation has not engaged in either the retail or wholesale plumbing business. On January 18, 1944, Joseph Capps started South Gate Pipe and Supply Company as a new sole proprietorship at the same premises occupied by the plaintiff. Such sole proprietorship has engaged in the business of wholesale plumbing supply distribution continuously since January 18, 1944.

### III

On its books of account plaintiff set up an account receivable from Joseph Capps in the aforesaid amount of $27,065.90, and credited its inventory account with a like

amount. Such account receivable remained on plaintiff's books until 1945, when it received cash payments from Joseph Capps of $20,000.00 on May 15, 1945, and $7,065.90 on May 23, 1945.

IV

After the sale of plaintiff's inventory assets was made, the plaintiff's retained assets consisted of cash, autos, trucks, building improvements and office furniture. The plaintiff's profit and loss statement, Federal taxes paid, and closing balance sheets for the years 1944 and 1946, inclusive, are shown in the following summary:

and deposited $5,000.00 of the corporation's cash, then on hand, in a savings account in the First Federal Savings and Loan Association in Long Beach, California. On June 1, 1946, the plaintiff corporation loaned $30,000.00 to the Santa Ana Homes Corporation. On June 30, 1947, the plaintiff corporation made two building construction loans to La Mois & Westfall of $14,412.00 and $14,412.50. On October 31, 1947, two additional loans were made to La Mois & Westfall, one consisting of $88.00 and the other of $87.50. On January 12, 1947, the plaintiff corporation loan-

## PROFIT AND LOSS

| FORM 1120: | Year 1944 | Year 1945 | Year 1946 |
|---|---|---|---|
| Gross profit from sales | $3,662.60 | —— | —— |
| Interest income | —— | $112.98 | $1,078.27 |
| Capital gains | —— | 774.07 | —— |
| Miscellaneous income | —— | —— | 553.50 |
| Total income | $3,662.60 | $887.05 | $1,631.77 |
| Compensation, officers | $ 800.00 | —— | —— |
| Taxes paid | 136.27 | $427.52 | $ 21.25 |
| Depreciation expense | 1,157.08 | 60.21 | 60.21 |
| Other deductions | 1,895.07 | —— | .85 |
| Total deductions | $3,988.42 | $487.73 | $ 82.31 |
| Normal tax net income | $ 325.82 | $399.32 | $1,549.46 |
| Normal and surtax paid | —— | $ 99.82 | $ 325.39 |
| Balance Sheets | 12–31–44 | 12–31–45 | 12–31–46 |
| Assets: | | | |
| Cash | $ 5,839.36 | $44,190.72 | $15,224.34 |
| Notes & Accts. Receivable | 37,065.90 | —— | 29,660.00 |
| Depreciable Assets, net | 1,630.27 | 744.13 | 683.92 |
| Deferred Assets | 325.24 | 325.24 | 219.07 |
| Total assets | $44,860.77 | $45,260.09 | $45,787.33 |
| Liabilities: | | | |
| Capital Stock | $15,000.00 | $15,000.00 | $15,000.00 |
| Surplus | 29,860.77 | 30,260.09 | 30,787.33 |
| Total liabilities | $44,860.77 | $45,260.09 | $45,787.33 |

V

Concurrently with the sale of its inventory assets, the plaintiff corporation loaned $10,000.00 to Joseph Capps, doing business as South Gate Pipe and Supply Company,

ed H. C. Legg $12,000.00. On May 31 and June 14, 1947, the plaintiff corporation made two loans to Dick Horst of $5,500.00 and $4,000.00, respectively. On May 4, 1948, the stockholders of the plaintiff cor-

poration decided to withdraw the plaintiff's deposit from the First Federal Savings and Loan Association and to utilize said money in the making of six percent (6%) mortgage loans. Business transactions of plaintiff subsequent to January 31, 1944, other than the foregoing lending transactions, included the sale of a Lincoln Zephyr automobile on September 11, 1945, and the annual collection of interest on money loaned.

## VI

The plaintiff corporation paid its franchise tax to the State of California for the calendar year of 1944 and each year thereafter. The plaintiff corporation filed Federal Tax Returns for the calendar years of 1944, 1945, 1946 and 1947. The plaintiff corporation has not been dissolved.

## VII

On March 15, 1943, plaintiff filed with the Collector of Internal Revenue a corporate income and declared value excess profits tax return and an excess profits tax .return for the year 1942 showing an income liability of $3,252.36. These liabilities were duly assessed and paid on or before the dates and in the amounts set out below:

| Date Paid | Amount |
| --- | --- |
| March 15, 1943 | $1,664.32 |
| June 15, 1943 | 1,664.32 |
| September 15, 1943 | 1,664.32 |
| December 15, 1943 | 1,664.32 |

Included in the foregoing payments were the following excess profits tax payments for the year 1942:

| Date Paid | Amount |
| --- | --- |
| March 15, 1943 | $813.09 |
| June 15, 1943 | 813.09 |
| September 15, 1943 | 813.09 |
| December 15, 1943 | 813.09 |

## VIII

On February 25, 1944, plaintiff filed amended returns for 1942 together with a .refund claim for corporation income and excess profits tax paid for the taxable year 1942. On March 15, 1945, the plaintiff filed a refund claim containing a statement of the grounds relied upon for re-

fund. By letter dated July 12, 1945, plaintiff was informed by the Internal Revenue Agent in Charge, Los Angeles, California, that a field investigation had disclosed a deficiency for 1942 in income tax of $133.-51 and a deficiency in excess profits tax of $1,061.74. Pursuant to a consent agreement filed by plaintiff on June 9, 1945, with the Internal Revenue Agent in Charge, such deficiencies, plus deficiency interest, were duly assessed. On January 5, 1946, plaintiff filed another claim for refund of excess profits taxes paid for 1942. The Commissioner of Internal Revenue determined that the plaintiff in 1944 was entitled to excess profits credit only for the month of January 1944, in which plaintiff was actively engaged in the plumbing business, and rejected plaintiff's claim for refund by letter mailed to the plaintiff on March 22, 1946.

## IX

Plaintiff made the following payments on March 27, 1946:

| | |
| --- | --- |
| Income tax | $133.51 |
| Interest | 4.93 |
| Excess profits tax | 1,061.74 |
| Interest | 268.33 |

Thereafter, plaintiff was allowed a refund of $11.93, which refund represented interest on a potential over-assessment of income tax for 1942. On August 20, 1947, plaintiff had a conference before the Technical Staff at Los Angeles, California, after which plaintiff was again informed that its claim was denied.

## X

Plaintiff's excess profits net income for the years 1940, 1941, 1943, and 1944, computed in accordance with Section 711(2) (L) of the Internal Revenue Code, 26 U. S.C.A. § 711(2) (1), was as follows:

| | |
| --- | --- |
| 1940 | $5,972.68 |
| 1941 | $15,784.04 |
| 1943 | None |
| 1944 | None |

Plaintiff's excess profits credit (based on income) for a taxable year of 12 months, as computed in accordance with Section 713 of the Internal Revenue Code, 26 U.S.

C.A. § 713, is $7,365.87. Plaintiff's adjusted net income for 1942 was $18,269.09.

### Appendix B
### Judgment

Pursuant to stipulation by counsel for the respective parties, the cause herein was submitted to the Court on the merits, upon the "Stipulation as to the Facts" and briefs filed herein. Said cause has been duly considered by the Court on the pleadings on file, said stipulation and briefs. Upon such consideration the Court finds for the plaintiff and against the defendant. Pursuant to stipulation by counsel for the respective parties, the said Stipulation of Facts shall stand in lieu of findings.

It is therefore considered and adjudged by the Court that the plaintiff do have and recover of and from the defendant the principal sum of Three Thousand Nineteen and 88/100 Dollars ($3,019.88), with interest thereon according to law from January 5, 1946.

It is further ordered that costs shall be assessed against the defendant, to be taxed by the Clerk in favor of the plaintiff in the sum of $17.40.