UNITED STATES *v.* WHITRIDGE, RECEIVER OF THE THIRD AVENUE RAILROAD COMPANY.

UNITED STATES *v.* JOLINE AND ROBINSON, RECEIVERS OF THE METROPOLITAN STREET RAILWAY COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 466, 467.  Argued October 21, 1913.—Decided November 10, 1913.

The Corporation Tax Law of 1909 was adopted before the ratification of the Sixteenth Amendment and imposed an excise tax on the doing of business by corporations, and not in any sense a tax on property or upon income merely as such.  *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107.

The Corporation Tax Law does not in terms impose a tax upon corporate property or franchises as such, nor upon the income arising from the conduct of business unless it be carried on by the corporation.

The act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112, does not impose a tax upon the income derived from the management of corporate property by receivers under the conditions of this case.

193 Fed. Rep. 289; 198 Fed. Rep. 774, affirmed.

THE facts, which involve the construction of the Federal Corporation Tax Act and the determination of whether the same imposed a tax upon the income derived from the management of corporate property by receivers appointed by the court, are stated in the opinion.

*Mr. Assistant Attorney General Graham* for the United States:

An insolvent corporation, operated by a receiver duly appointed by a court of equity, is, while in the hands of such receiver, "doing business" within the meaning of § 38 of the Corporation Tax Act of August 5, 1909, 36 Stat. 11, 112.

Such corporation being engaged in business, the receiver thereof is obliged to make the return provided for in the statute. *Central Trust Co.* v. *New York City*, 110 N. Y. 250, 256; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 145; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *In re Metropolitan Ry. Receivership*, 208 U. S. 90; *Morrison* v. *Forman*, 177 Illinois, 427; *New York Terminal Co.* v. *Gaus*, 204 N. Y. 512, 515; *Joline* v. *Williams*, 200 N. Y. 528; *P. & R. R. R. Co.* v. *Commonwealth*, 104 Pa. St. 80.

*Mr. Joseph H. Choate, Jr.*, with whom *Mr. Matthew C. Fleming* was on the brief, for respondents in No. 466.

*Mr. Arthur H. Masten*, with whom *Mr. Ellis W. Leavenworth* was on the brief, for respondents in No. 467.

MR. JUSTICE PITNEY delivered the opinion of the court.

These cases were heard together in the District Court and in the Circuit Court of Appeals (*sub nom. Pennsylvania Steel Company* v. *New York City Railway Company*, 193 Fed. Rep. 286; 198 Fed. Rep. 774). They were argued together in this court, and may be disposed of in a single opinion.

In the years 1909 and 1910 certain lines of street railway in the City of New York, that may be conveniently designated as the Third Avenue system, were in the hands of the respondent Whitridge, as receiver, under orders made in the year 1908 by the Circuit Court of the United States for the Southern District of New York in actions pending therein against the several proprietary companies. One of these actions was a foreclosure suit; the others were creditors' actions based upon the insolvency of the respective companies. The powers conferred upon the receiver did not vary in any respect now

material, and so a recital of the substance of one of the orders will suffice as an example. This order constituted Whitridge receiver of all the railroads and other property of the company, including tracks, cars and other rolling stock and equipment, easements, privileges and franchises, and the tolls, earnings, income, rents, issues and profits thereof, with authority "to run, manage, and operate the said railroads and properties, to collect the rents, income, tolls, issues and profits of said railroads and property, to exercise the authority and franchises of said defendant, and discharge its public duties, acting in all things subject to the supervision of this court." By the same order the officers, agents and employés of the company were required to turn over and deliver to the receiver all of the said property in their hands or under their control, and the company was enjoined from interfering in any way with his possession or management.

In the same years (1909 and 1910) certain other lines of street railway in the City of New York, which may be described as the Metropolitan system, were in the possession of the respondents Joline and Robinson as receivers, appointed in the year 1907 by the Circuit Court of the United States for the same district, in several actions therein pending against the corporations which were owners of these lines. The orders appointing these receivers contain provisions substantially similar to those already recited. (See *In re Metropolitan Railway Receivership*, 208 U. S. 90, 93–96.)

In the year 1911, petitions were filed in the Circuit Court in behalf of the United States praying for orders directing the receivers to make returns of the net income of the respective railway corporations for the years 1909 and 1910, to the collector of internal revenue, in the manner required by the provisions of the Corporation Tax Law. (Tariff Act of August 5, 1909, § 38, 36 Stat., c. 6, pp. 11, 112–117.)

The applications were resisted by the receivers on the ground that the respective corporations did not during the years 1909 and 1910 carry on any business in respect of the property that was in their hands as such receivers; that they as such receivers managed, controlled and operated the same, and carried on all the business in respect thereto, and received all the income arising therefrom, not acting in place of the directors and officers of the respective companies, but as officers of the court; and that they were therefore not subject to the provisions of the act.

Jurisdiction of the controversy having been transferred to the District Court by virtue of the new Judicial Code, § 290, 36 Stat. 1167, that court sustained the contention of the receivers (193 Fed. Rep. 286) and the Circuit Court of Appeals affirmed this decision (198 Fed. Rep. 774). The cases are brought here by writs of certiorari.

As repeatedly pointed out by this court, the Corporation Tax Law of 1909—enacted, as it was, after Congress had proposed to the legislatures of the several States the adoption of the Sixteenth Amendment to the Constitution, but before the ratification of that Amendment—imposed an excise or privilege tax, and not in any sense a tax upon property or upon income merely as income. It was enacted in view of the decision of this court in *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 158 U. S. 601, which held the income tax provisions of a previous law (Act of August 27, 1894, 28 Stat., c. 349, pp. 509, 553, § 27, etc.) to be unconstitutional because amounting in effect to a direct tax upon property within the meaning of the Constitution and because not apportioned in the manner required by that instrument.

As was said in *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 145, respecting the act of August 5, 1909—"The tax is imposed not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or in-

surance business and with respect to the carrying on thereof, in a sum equivalent to one per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, when imposed in this manner it is a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint stock organizations of the character described. As the latter organizations share many benefits of corporate organization it may be described generally as a tax upon the doing of business in a corporate capacity." This interpretation was adhered to and made the basis of decision in *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187, and *McCoach* v. *Minehill Railway Co.*, 228 U. S. 295, 300.

A reference to the language of the act [1] is sufficient to

---

[1] SEC. 38. That every corporation . . . organized for profit and having a capital stock represented by shares . . . organized under the laws of the United States or of any State . . . and engaged in business in any State . . . shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation . . . equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations . . . subject to the tax hereby imposed. . . .

Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation . . . received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties. . . .

And on or before the first day of March, nineteen hundred and ten, and the first day of March in each year thereafter, a true and accurate return under oath or affirmation of its president, vice-president, or other principal officer, and its treasurer or assistant treasurer, shall be made by each of the corporations . . . subject to the tax imposed by this section, to the collector of internal revenue for the district in which such corporation . . . has its principal place of business. 36 Stat, 112,

show that it does not in terms impose a tax upon corporate property or franchises as such, nor upon the income arising from the conduct of business unless it be carried on by the corporation. Nor does it in terms impose any duty upon the receivers of corporations or of corporate property, with respect to paying taxes upon the income arising from their management of the corporate assets, or with respect to making any return of such income.

And we are unable to perceive that such receivers are within the spirit and purpose of the act, any more than they are within its letter. True, they may hold, for the time, all the franchises and property of the corporation, excepting its primary franchise of corporate existence. In the present cases, the receivers were authorized and required to manage and operate the railroads and to discharge the public obligations of the corporations in this behalf. But they did this as officers of the court, and subject to the orders of the court; not as officers of the respective corporations, nor with the advantages that inhere in corporate organization as such. The possession and control of the receivers constituted, on the contrary, an ouster of corporate management and control, with the accompanying advantages and privileges.

Without amplifying the discussion, we content ourselves with saying that, having regard to the genesis of the legislation, the constitutional limitation in view of which it was evidently framed, the language employed by the lawmaker, and the reason and spirit of the enactment, all considerations alike lead to the conclusion that the act of 1909 did not impose a tax upon the income derived from the management of corporate property by receivers, under such conditions as are here presented.

*Decrees affirmed.*