### COLORADO FUEL & IRON CORPORATION v. NICHOLAS.

#### No. 11011.

District Court, D. Colorado.

July 26, 1939.

Fred Farrar, of Denver, Colo., and Webster & Garside, of New York City, for plaintiff.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., for defendant.

SYMES, District Judge.

The plaintiff says the defendant Collector of Internal Revenue should return $20,632.88 with interest because it was erroneously assessed and collected as a capital stock tax for the fiscal year ending June 30, 1936. Plaintiff was incorporated April 16, 1936, under the laws of Colorado. The dispute we must resolve is: Was plaintiff carrying on or doing business for any part of the year ending June 30, 1936? Section 105, Revenue Act of 1935, as amended in 1936 (a) and (d), 26 U.S.C.A. § 1358.

The facts are stipulated. A short historical recitation is necessary to a proper understanding of the question.

For many years, including the times herein mentioned, the debtor company operated a large steel plant at Pueblo, coke ovens, blast furnaces and mined coal and iron ore in large quantities. On August 1, 1933, this Court in an equity proceeding took possession of the Colorado Fuel and Iron Company, appointed a receiver and operated the property until August 1, 1934. On that date the company and a subsidiary known as the Colorado Industrial Company

filed petitions in this court seeking reorganization under section 77B, 11 U.S.C.A. § 207. The petitions were approved, a trustee appointed, and the prior proceeding stayed.

In due course a plan of reorganization was filed, a pertinent provision of which called for the organization of a new company, The Colorado Fuel and Iron Corporation, plaintiff here, to take over the business, properties, assume all the obligations of the debtor company and exchange its securities for those of the debtor on terms not of moment here. The new company was accordingly organized under the supervision of the Court, which prescribed the terms of the certificate of incorporation, by-laws and all other steps necessary to complete its organization. Its Articles of Incorporation state it was to take over and operate the business of the Colorado Fuel and Iron Company then in reorganization. The plan was confirmed on April 30, 1936, and the order directed that on July 1, 1936, or such later date thereafter as practicable, the Trustee transfer all the properties of the debtor company to the new company and that: "Said transfer shall be effective as of midnight, June 30, 1936, and the operations and conduct of all of the business and affairs of the Fuel and Iron Company * * * by the Trustee after said date shall be deemed to be and shall be for the account of the new company, as fully and to the same extent as if the new company had taken title to the said properties and had assumed the operation thereof at midnight, June 30, 1936." All this was done.

The Government says the activities of the Board previous to that time set forth in the agreed statement of facts prove its case. True, the directors of the new corporation held meetings, passed the usual resolutions and took the necessary steps to complete the corporate set-up. That is to say, nine shares of stock were sold to qualify the directors, by-laws were adopted, officers elected and directed to procure corporate books and comply with the orders of the court and the plan of reorganization. Most of these, however, were mere authorizations to be carried out after June 30th, and nothing more, indicating that actual business was not to start until July 1, 1936, or later.

The new company, a creature of the court, was under its care until July 1, 1936. Manifestly it could be liable for the tax only if it engaged in the business of digging coal and ore, making it into steel and selling it. This it could not do before the critical date because it had no properties or means for carrying on business. The business it took over and has since conducted was, previous to July 1st, operated by the Trustee. The Court may have been in business but surely not the plaintiff. So we find nothing done previous to July 1 that can be classed as doing business—in this case operating a steel mill, buying supplies, selling products, paying salaries, wages, or any of the incidental acts connected with the actual operation of the property.

The question is not new in law but is in fact. Most of the cases cited in the briefs concern factual situations far removed from ours, such as corporations going out of business, leasing property, distributing earnings, etc. For this reason they are not helpful, and their examination an unnecessary burden. So we must fall back, as judges are prone to do, upon the overworked statement repeated in Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460, "That the decision in each instance must depend upon the particular facts before the court" (242 U.S. page 516, 37 S.Ct. page 204, 61 L.Ed. 460).

In an analogous situation Judge Brewster (Mason v. U. S., D.C., 27 F.2d 1013, 1014) said it could not carry on the business for which it was organized until it had acquired the assets of the old company. That: "Liability for the tax would not attach until the Associates had actually begun the business contemplated." Harmar Coal Co. v. Heiner, 3 Cir., 34 F.2d 725, is as helpful. It cites Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, and points out that certain corporate acts in which a corporation may engage concern only the maintenance of corporate existence and have no relation to the conduct of the business for which the corporation is organized, while other corporate acts are done solely in the furtherance of that business without relation to the maintenance of the corporation. Clearly everything plaintiff corporation did prior to the critical date falls within the first category.

It must be borne in mind this tax is not imposed on a corporation as such, but only when it exercises its privilege of doing and carrying on business for profit,

for, as stated in the above case [34 F.2d 727], "The question is rather what the corporation is doing than what it could do." Nothing of any consequence that was authorized by the Board of Directors previous to June 30, 1936 was to be performed prior to that date, nor did it in any way actually engage in the pursuit of profits.

I believe in the point I made at the argument, i. e., that the plaintiff was an arm or creature of the court previous to June 30, 1936, and not subject to the tax. Section 77B, Article X, Sec. 216, says a plan of reorganization may provide that the court, in the execution of a plan, may create and use one or more other corporations organized or thereafter to be organized and may, in effect, dictate the charter of such new corporation. In answer to this counsel for the Government offers an opinion of the Chief Counsel of the Bureau of Internal Revenue. He held the tax applied to a corporation in reorganization where the Court temporarily continued the debtor in possession and management of its business. He distinguished that situation from United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159, wherein the Court in an equity proceeding took over a debtor's estate, and appointed a receiver with full authority to operate the business. I doubt if the distinction is a good one, but be that as it may; he supports the view that where the Court is operating the property and not the corporation, the latter is not liable for the tax. The Whitridge case, supra, states the law does not in terms impose any duty on receivers of corporations or corporate property with respect to paying taxes upon the income arising from their management of the corporate assets or to making any return of such income.

Section 77B, Secs. 268 to 272 inclusive, deal with the tax situation of corporations in reorganization. Sec. 268 provides that except as provided in 270, no income or profit shall, etc., be deemed to have accrued or to have been realized by a debtor trustee or by a corporation organized or made use of for effectuating a plan, etc. Sec. 269 provides that if it is thought the plan has for its purpose the avoidance of taxes, objections to its confirmation shall be made on that ground by the Secretary of the Treasury. There is none in this proceeding. We find nothing in the sections referred to inconsistent with the views here expressed.

It is my opinion that the plaintiff should prevail. Judgment may be entered in favor of the plaintiff for the relief demanded. Counsel for plaintiff may file proposed findings of fact and conclusions of law.