## UNITED SHIPYARDS, Inc., v. HOEY.
### No. 76.

Circuit Court of Appeals, Second Circuit.

Nov. 30, 1942.

Rogers & Condon, of New York City (John F. Condon, Jr., and Jack M. Evans, both of New York City, of counsel), for plaintiff-appellee.

Mathias F. Correa, U. S. Atty., of New York City (William L. Lynch, of New York City, of counsel), for defendant-appellant.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This case arises under the Capital Stock Tax Act (being § 105(a) of the Revenue Act of 1935 as amended, 26 U.S.C.A. Int. Rev.Acts, page 798), under which, for each year ending June 30, there is "imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjudged declared value of its capital stock."

Appellee, a corporation organized under the laws of the State of New York, which had been in the business of building and repairing ships, filed a petition for reorganization under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on July 23, 1934; on the same date, the Bankruptcy Court entered an order (which it later made "permanent") approving the petition as filed, and continuing appellee, as debtor, in possession of its property and estate. On September 29, 1936, appellee filed a return, under the Capital Stock Tax Act, for the year July 1, 1935, to June 30, 1936, and on the same date paid to the collector the capital stock taxes shown in that return. A plan of reorganization was subsequently effected in the reorganization proceedings, and, in 1937, a final decree was entered discharging appellee from its debts and liabilities and terminating the proceedings. In 1938, appellee filed a claim for refund of the taxes paid, on the ground that it had not carried on any business during the taxable year which made it subject to the tax. The claim having been rejected, appellee brought this suit for refund.[1] From a judgment for appellee, appellant appeals.

In United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159, the court held that, where equity receivers were appointed for certain corporations, and the receivers carried on the business, there was not collectible a special corporate excise tax, then in force, imposed "with respect to the carrying on or doing business by" corporations. The court said that the receivers, in managing and operating the

[1] The suit was begun against the Collector. He subsequently died, and his executrix was duly substituted as defendant.

business, acted "as officers of the court and subject to the orders of the court; not as officers of the respective corporations, nor with the advantages that inhere in corporate organization as such. The possession and control of the receivers constituted, on the contrary, an ouster of corporate management and control, with the accompanying advantages and privileges."

No doubt because of that decision, there were issued, under the statute here before us, Treasury Regulations 64, Article 35, reading: " * * * If during any entire year ending June 30th, all of the property of a corporation is in the hands of such public official (i.e., a receiver, or a trustee in bankruptcy, or is in the custody of a federal or state officer pending the appointment of a receiver or trustee in bankruptcy), the corporation is not subject to the tax for such year * * *." However, Article 42 of the same Regulations provides: "Doing Business—The term 'business' is very comprehensive and embraces whatever occupies the time, attention, or labor of men for profit. Accordingly, regardless of the nature of its activities, any corporation organized for profit and carrying out the purpose of its organization is doing business within the meaning of the Act. Similarly, even if not organized for profit, any corporation which nevertheless engages in activities ordinarily carried on for profit is also doing business. It is immaterial whether the activities result in a profit or a loss, whether the corporation has been successful in its enterprise, or that because of unfavorable business conditions, no operations are carried on for a particular period. No particular amount of business need be done, nor is it necessary that the business be continuous throughout the taxable year. The case is exceptional in which the activities of a corporation organized for profit do not amount to doing business within the meaning of the Act. Such a case is generally limited to one in which the corporation is not pursuing the ends for which organized, i.e., profit."

Appellee contends that there is no distinction between a debtor continued in possession under § 77B and an equity receiver or a trustee in bankruptcy, and that, accordingly, under the doctrine of the Whitridge case, no tax was due from it. In support of its contention, appellee cites and quotes from In re Walker, 2 Cir., 93 F.2d 281, 283, where it was said that the purpose of the provision continuing a debtor in possession "is certainly that the debtor shall be in fact a trustee," and In re Martin Custom Made Tires Corp., 2 Cir. 108 F.2d 172, 173, where it was said: "The attempted distinction between the powers of a debtor in possession and the rights of a trustee in bankruptcy is unreal. A debtor in possession holds its powers in trust for the benefit of the creditors." We cannot agree that those cases are in point.

It would be time-saving if we had a descriptive catalogue of recurrent types of fallacies encountered in arguments addressed to the courts, giving each of them a number, so that, in a particular case, we could say, "This is an instance of Fallacy No.—"[2] Such a device would be helpful here. For the fallacy of the appellee's argument is of a familiar kind: In formulating the reasons for their decisions, judges often adopt rulings made in previous decisions in which the facts were somewhat similar, saying, in effect, "This situation is sufficiently like those which we previously considered so that we can disregard the differences and restrict ourselves to the resemblances." And, thus ignoring—for the purpose immediately at hand—the unlikenesses, the situations are, frequently, spoken of as identical. But elliptical discussions of cases partly alike, as if there were complete identity, is merely for convenience. There is present, although it may be unexpressed, an "as if," a "let's pretend"—a simile or metaphor. Such "as-if" or metaphorical thinking is invaluable in all provinces of thought (not excepting that of science). However, some of the greatest errors in thinking have arisen from the mechanical,

[2] Schopenhauer, in The Art of Controversy, sketched a catalogue of familiar fallacies and "strategems" used in all sorts of arguments. He remarks that it "would be a very good thing" if every strategem "could receive some short and obviously appropriate name." He refers to Aristotle's descriptions of some of the "strategems." The older books on logic would be useful to one who undertook to compile such a book; for a recent helpful discussion, see Cohen and Nagel, Logic and Scientific Method (1934), especially 376–390. What is badly needed is a special lawyers' edition of a book of fallacies.

unreflective, application of old formulations—forgetful of a tacit "as if"—to new situations which are sufficiently discrepant from the old so that the emphasis on the likenesses is misleading and the neglect of the differences leads to unfortunate or foolish consequences.[3] In governmental or business administration, such neglect, when it occurs, provokes justifiable irritation at "bureaucracy";[4] in judicial administration it deserves criticism as unenlightened precedent-mongering.[5]

A debtor company in possession in not a receiver or trustee. It is, as we said, in Re Wil-Low Cafeterias, Inc., 2 Cir., 111 F.2d 83, 85, "analogous to" a trustee, i.e., it is, for some purposes, to be treated as if it were a trustee. For the corporation debtor is still carrying on or doing business, although the manner in which it can operate is restricted by trustee obligations imposed by the Bankruptcy Act. Indeed it was, in part, out of a desire to preserve a continuity of management and the complete loss of

the advantages and privileges which accompany such a continuation that section 77B departed (unwisely according to many critics) from all previous provisions of the Bankruptcy Act and deviated markedly from well-settled equity receivership practice, in allowing the debtor, although plainly not a disinterested person, to remain in possession and continue operations.

Appellee argues that there was no provision contained in its articles of incorporation giving it authority to do business as a corporate trustee. That fact surely does not help appellee's argument. For it shows that appellee could not, lawfully, have served as a trustee in bankruptcy for any other person. It follows, then, that it had not ceased to engage in its regular business of shipbuilding and repairing ships and, instead, taken on the business of acting as a trustee in bankruptcy (for itself), since it had no authority to do so under the laws of the state of its incorporation. The plain truth is that it was still doing its business, but subject to limitations, under the Bank-

---

[3] See, e. g., Vaihinger, The Philosophy of "As if" (transl. 1925) Tourtoulon, Philosophy in The Development of Law (transl. 1922) 293–296, 383–399, 644 et seq.; K. Burke, Permanence and Change (1936); Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192, 199. Burke admirably criticizes what, in somewhat ponderous words, he calls unwise "analogical extension."

[4] Cf. Dimmock and Hyde, Bureaucracy and Trusteeship in Large Corporations, Monograph No. 11, Temporary National Economic Committee, 77th Cong., 3d sess. (1940).

[5] Holmes, a half century ago, masterfully discussed the effects of the fiction (or "as if") that "the principal and agent are one," and, generalizing, said that "the whole outline of the law is the resultant of a conflict, at every point between logic and good sense—the one striving to work fiction out to consistent results, the other restraining and last overcoming that effort" when the results become unjust or absurd. Common sense, he showed, revolts when the application of an analogy or fiction "is pushed far enough to become noticeable," for a "fiction is not a satisfactory reason for changing men's rights or liabilities." Holmes, Agency (1891) reprinted in Holmes' Collected Legal Papers (1921) 49 et seq. Cf. Hammond-Knowlton v. United States, supra, 121 F.2d at page

200, note 22; The Eugene F. Moran, 212 U.S. 466, 474, 29 S.Ct. 339, 53 L.Ed. 600. See the discussion in the Supreme Court opinions—cited and quoted in Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, 217 note 29—of the "gradual process of judicial inclusion and exclusion."

There is thus a need to revise a fictional major premise, expressed as a legal rule, in the light of the consequences revealed by logic, when the minor or fact premise departs too far from the facts with reference to which the major premise was originally formulated.

Modern semanticists have done much to expose that need. However, some of them have done so with insufficient acknowledgment that they were not the discoverers of the treacherous nature of words and of their tendency to tyrannize thinking; that discovery goes back at least to Plato and Aristotle; see Ogden & Richards, The Meaning of Meaning (4th Ed. 1938) 31–38; nor were the scholastics always as unaware of these word-dangers as some persons (under Francis Bacon's indirect influence) suppose. Some modern semanticists, too, have an inadequate grasp of the indispensability of general statements and abstractions (indeed of the realities of the relations expressed by some abstractions) and of the inestimable utility of fictions and other metaphorical expressions—if employed consciously as such.

ruptcy Act, restricting the purposes for which, and the manner in which, it could conduct that business.[6]

Judgment reversed.

---

[6] If a trust company, authorized by law to act as a trustee in bankruptcy, had become trustee in bankruptcy for appellee, it would not have been obliged to pay a capital stock tax merely as successor to appellee in the operation of appellee's business; but it would have been obliged to pay such a tax because it was doing business as a trust company, in acting as trustee in bankruptcy (and no doubt in performing other functions as such trust company).