**UNITED ARTISTS CORP.**

**v.**

**GRINIEFF et al.**

United States District Court
S. D. New York.
April 20, 1954.

Simpson, Thacher & Bartlett, New York City, for plaintiff and additional defendants Racine Television Corp., Matthew M. Fox and Motion Pictures for Television, Inc.

Burlingham, Hupper & Kennedy, New York City, for defendant Masterpiece Productions, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for additional defendants Benjamin, Krim and Peyser.

**IRVING R. KAUFMAN, District Judge.**

These are motions pursuant to Rules 13(h), 21 and 12(b)(1) of the Federal Rules of Civil Procedure, 28 U.S.C.A.,

(1) to vacate an ex parte order of this Court of November 13, 1953 insofar as said order directs that Robert S. Benjamin, Arthur B. Krim, and Seymour M. Peyser, (hereafter referred to as "the additional defendants") be made defendants to the first counterclaim of defendant Masterpiece Productions, Inc. (hereafter referred to as "Masterpiece"),

(2) to drop the additional defendants from the action, and

(3) to dismiss the first counterclaim as against the additional defendants.

Two causes of action are alleged in the complaint of plaintiff, United Artists Corporation. Plaintiff alleges that it acquired title to the copyrights in 25 motion pictures; that defendant Masterpiece licensed the television performance of these pictures without plaintiff's consent; and that Masterpiece represented that it, and not plaintiff, has the right to televise these pictures. These acts are alleged to have infringed plaintiff's copyrights and to have constituted unfair trade practices and unfair competition.

The answer of Masterpiece admits the grant by it to others of licenses for televising the pictures and avers that it acquired the right to do so through various mesne agreements. As affirmative defenses, it sets forth: that plaintiff consented to Masterpiece's acts; that plaintiff is guilty of laches; that it is estopped from maintaining this action because the additional defendants' law firm as retained counsel for Masterpiece, for the

specific purpose of negotiating the acquisition of the television rights in the pictures, had advised the defendants that they had succeeded in acquiring the rights which the additional defendants, as present stockholders or officers of plaintiff, now attempt to deny; that the complaint fails to state a claim upon which relief can be granted.

The amended answer contains two counterclaims. The first, which is the one in issue here, is asserted against the plaintiff, the additional defendants and others and alleges again the advice of the additional defendants as counsel for Masterpiece in 1947, and the successful negotiations for control of plaintiff by the additional defendants in 1950 and 1951. It also alleges that the additional defendants procured plaintiff to commence this action in 1951; that in the fall of 1951 the additional defendants "conceived the idea and entered into a plan" to make a transfer, including the disputed rights, to defendant Racine and that "it was a further part of the plan then and there agreed upon" that Racine would license these to two corporations owned by defendant Fox, and that the additional defendants, plaintiff, Fox, and Fox' two corporations would "cooperate" in destroying Masterpiece's rights and in interfering with exploitation of such rights by communications and threats to Masterpiece's actual and potential licensees. Masterpiece demands relief in the form of compensatory and punitive damages, an injunction, a declaratory judgment of its rights, delivery of copyrighted materials, and an accounting. The second counterclaim is against plaintiff only and alleges a breach of a covenant not to impair Masterpiece's rights, and the same relief as in the first counterclaim is demanded.

█ Both the motion to dismiss and the motion under Rule 13(h), in part, are predicated upon lack of jurisdiction over the subject matter of the first counterclaim as against the additional defendants. The jurisdictional issue hinges upon the classification of the counterclaim as compulsory or permissive under Rule 13. If the counterclaim is compulsory, i. e. " * * * if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *", Rule 13(a), then there need be no jurisdictional basis for the counterclaim independent of that which supports the original complaint. 3 Moore, Federal Practice 103 (2d Ed. 1948). If the counterclaim is merely permissive under Rule 13(b), then it must fail as to the additional defendants as there is no independent jurisdiction to support it, there being identity of citizenship between the counterclaiming defendant Masterpiece and the additional defendants, and the counterclaim does not appear to present a federal question, nor does Masterpiece allege that it does. 3 Moore, Federal Practice, 103, 53–57 (2d Ed. 1948) and Rule 8(a)(1).

█ I am constrained to resolve this conflict by holding that the counterclaim is merely permissive in that it arises out of a transaction wholly different from the one upon which the complaint is based. The crucial test of compulsoriness is that of logical relationship between the claims, tempered by an eye to flexibility, by a realization that the law's logic is but an inchoate empiricism, and by the desire to avoid multiplicity of suits. At the same time the Court must keep in mind the boundaries of federal jurisdiction, which the Rules do not enlarge. See Rule 82 and cf. Friend v. Middle Atlantic Transp. Co., 2 Cir., 1946, 153 F.2d 778, certiorari denied 1946, 328 U.S. 865, 66 S.Ct. 1370, 90 L.Ed. 1635.

Since Masterpiece admits that it has licensed the pictures to others, and avers that it had the right to do so, the only issue raised by the plaintiff's complaint and Masterpiece's second counterclaim is clearly one of law, involving the interpretation of a particular clause in one of the mesne conveyances upon which both plaintiff and defendant make their

competing claims of right. Plaintiff's claims are both based solely upon the language of a purported grant and admitted acts of Masterpiece. See Nachtman v. Crucible Steel Co. of America, 3 Cir., 1948, 165 F.2d 997. On the other hand, Masterpiece's first counterclaim is logically related to the grant only in that a grant of home television rights to it is the *condition precedent* to its counterclaim. Here, the relationship ends. In *1947*, the additional defendants advised Masterpiece as counsel; in 1950–51 they acquired interests in plaintiff; in late *1951* the additional defendants first "conceived the idea" to injure Masterpiece by entering into a conspiracy with plaintiff and others. Only the acts in 1947 of the additional defendants have reference to a grant and there is no attempt by Masterpiece in its allegations to tie up the advice in *1947* with the core of Masterpiece's claim—the "conspiracy" in 1951—or any allegation that the "conspiracy" was even incipient in 1947. Moreover, the acts or transaction which gave rise to the "conspiracy"—the "plan" of 1951—have nothing whatever to do with the legal issue of the scope of the disputed grant clause; the "conspiracy" or "competitive tort" of some sort (the legal theory is not clear, and I do not wish to adjudicate its sufficiency) which Masterpiece alleges raises a difficult factual question hinging on intent and a "plan". Judicial economy is not served by attempting to mix oil with water. Indeed, instead of economy, I foresee complexity and unnecessary expenditure of judicial energy in an attempt to forestall confusion of issues in the instant case, if the additional defendants are permitted to remain in the case.

Masterpiece argues that it has a defense of unclean hands to plaintiff's claim and that this defense is logically related to its first counterclaim in that unclean hands diminishes plaintiff's right based upon the disputed grant and therefore, if the defense is logically related to its counterclaim, then all three

are part of the same transaction. The appellation of unclean hands presumably refers to Masterpiece's affirmative defense of estoppel. However, Masterpiece alleges in this affirmative defense only the 1947 advice and present control of plaintiff by the additional defendants. Again, there is no tying in with the 1951 plan.

The case authority in the area does not help Masterpiece. American Samec Corp. v. Florian, D.C.Conn.1949, 9 F.R.D. 718, involved a patent infringement claim and counterclaim based upon unfair competition. The Court held the counterclaims to be compulsory, in spite of its own statement that such claims usually are not based on the same transaction, because, under the peculiar facts, the same evidence applied to both claims. As discussed previously, here there is a probability that little or no evidence is needed as to plaintiff's complaint—the legal scope of the grant is in issue, see Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 1951, 190 F.2d 217, 221—and radically different evidence is needed to prove whatever claim Masterpiece may have based upon a conspiracy or "plan". Masterpiece relies upon King v. Edward B. Marks Corporation, D.C.S.D.N.Y.1944, 56 F.Supp. 446. In the King case, the plaintiff claimed copyright infringement and defendant counterclaimed that plaintiff breached the contract by which plaintiff allegedly granted his rights to defendant. Judge Leibell held the two claims to be part of the same transaction. However, the main issue was the legal effect of a narrow transaction between the parties: a letter from plaintiff to defendant which plaintiff claimed terminated the contract. Masterpiece similarly relies upon Lesnik v. Public Industrials Corp., 2 Cir., 1944, 144 F.2d 968. There, plaintiff brought a simple action on a promissory note. Defendant was permitted by the District Court to assert a counterclaim against plaintiff and others based upon a conspiracy to withhold dividends of one corporation for

the purpose of depressing and subsequently purchasing the holdings of defendant corporation in the first corporation. Although the narrow issue in that case was one of venue, Judge Clark, writing for the Court, found the counterclaim to be compulsory. While on its face, it is difficult to ascertain the relationship between the claim in the complaint and the counterclaim, Judge Clark pointed out that the acquisition of the note by plaintiff with the specific purpose of using it to depress the stock price was an essential part of the conspiracy. He also noted that *proof* of the conspiracy bore directly upon the assignment of the note to plaintiff. Here, the nexus, if any, between the 1947 negotiations and the conspiracy has not been shown and *proof* of the acquisition of plaintiff's alleged rights has no bearing on the conspiracy. See Rosenthal v. Fowler, D.C.S.D.N.Y. 1952, 12 F.R.D. 388; cf. Thierfield v. Postman's Fifth Avenue Corporation, D.C.S.D.N.Y.1941, 37 F.Supp. 958.

In addition, Masterpiece cites some cases arising under the anti-trust laws. These cases are not in point, and are based upon a purported overriding policy of depriving a patent misuser of infringement remedies. A tendency to overliberalize the transaction definition to deter patentees from misuse may have been present in these decisions. Cf. Switzer Bros., Inc., v. Locklin, 7 Cir., 1953, 207 F.2d 483, 487.

The resolution of the delicate question of distinguishing between "permissive" and "compulsory" counterclaims can only be made by a close examination of the specific facts in each case before the Court. In view of Masterpiece's strong reliance on "precedent", Judge Frank's words of caution concerning the use of precedent are particularly applicable to the instant case. He stated in United Shipyards v. Hoey, 2 Cir., 131 F.2d 525, 526–527:

"In formulating the reasons for their decisions, judges often adopt rulings made in previous decisions in which the facts were somewhat similar, saying, in effect, 'This situation is sufficiently like those which we previously considered so that we can disregard the differences and restrict ourselves to the resemblances.' And, thus ignoring —for the purpose immediately at hand—the unlikenesses, the situations are, frequently, spoken of as identical. But elliptical discussions of cases partly alike, as if there were complete identity, is merely for convenience. There is present, although it may be unexpressed, an 'as if,' a 'let's pretend'—a simile or metaphor. Such 'as-if' or metaphorical thinking is invaluable in all provinces of thought (not excepting that of science). However, some of the greatest errors in thinking have arisen from the mechanical, unreflective, application of old formulations—forgetful of a tacit 'as if'— to new situations which are sufficiently discrepant from the old so that the emphasis on the likenesses is misleading and the neglect of the differences leads to unfortunate or foolish consequences."

See also Larson v. Jo Ann Cab Corporation, 2 Cir., 1954, 209 F.2d 929.

██ It is my conclusion that the first counterclaim of Masterpiece is permissive, and should be dismissed as against the additional defendants. In view of this determination, I find it unnecessary to rule on the other grounds urged for dismissal. Settle order.