In re 4100 NORTH HIGH LIMITED and Northwest Business and Professional Center, Limited, Bankrupts.

Fred G. PRESTON, Trustee in Bankruptcy, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy Nos. B2 75–492–B, B2 75–493–A.

United States Bankruptcy Court, S. D. Ohio, E. D.

March 17, 1980.

Thomas C. Scott, of Loveland, Callard, Clapham & Scott, Columbus, Ohio, for plaintiff.

Fred G. Preston, Trustee in Bankruptcy, Columbus, Ohio.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, Albert R. Ritcher, Asst. U. S. Atty., Columbus, Ohio, Jason P. Green, Trial Atty., Tax Div. of the Dept. of Justice, Washington, D. C., for defendant, United States of America.

## OPINION, DECISION AND ORDER RULING UPON MOTION FOR SUMMARY JUDGMENT

D. J. KELLEHER, Bankruptcy Judge.

These adversary proceedings were commenced by separate complaints filed December 30, 1977 by the plaintiff, Fred G. Preston, in his capacity as trustee in bankruptcy of 4100 North High Limited [4100 N. High] and Northwest Business and Professional Center, Ltd. [Northwest], respectively. Responsive pleadings were filed on March 15, 1978 by the United States Attorney for this District.

A joint pre-trial conference of both adversary proceedings was held on April 17, 1978 at which counsel for the parties agreed to submit to the Court issues made by the pleadings upon stipulations and briefs. A Stipulation of Facts was filed in each case on May 17, 1978. Each recites that the stipulations were made "for the purpose of submitting this case for trial upon cross-motions for Summary Judgment." Because the similar facts of these adversary proceedings raise identical legal issues they will be joined for decision.

The parties have stipulated to the facts in the statement which follows. Each bankrupt is an Ohio limited real estate partnership whose principal asset was a building. The business of each was the rental of space and collection of rentals from the building. Each was adjudicated a bankrupt on May 2, 1975 and Fred G. Preston thereupon qualified and has since acted as Trustee in Bankruptcy for each. On May 7, 1975 the Court authorized the trustee to conduct the business and manage the property of each. During 1975, until the trustee disposed of the buildings, he did operate the business of each bankrupt and while doing so he collected rents from tenants.

On August 30, 1977 plaintiff filed two U. S. Fiduciary Income Tax Returns for each bankrupt with the District Director of Internal Revenue. The first return for each covered the fiscal period from May 2, 1975 through April 30, 1976; the second return for each covered the fiscal period from May 1, 1976 through April 30, 1977. Rental income was reported in each 1976 return. Income reported in each fiscal 1977 return is the interest earned on cash deposited with a bank. The plaintiff trustee reported no income tax due upon either return for the fiscal period ended April 30, 1976.

On December 12, 1977 the Internal Revenue Service [I.R.S.] issued notices to the trustee, advising him that pursuant to 26 U.S.C. § 6213(b) he had erred in computing the tax and that a total balance of $714.32 was due for 4100 N. High and $3,086.96 was due for Northwest regarding the returns filed by the trustee for the fiscal period ended April 30, 1976. On February 10, 1978 notices and demands for payment were issued by I.R.S. to the plaintiff in the amount of $727.36 for 4100 N. High and $3,143.33 for Northwest.

The parties have also stipulated that filed, proved and allowed claims total $61,-935.59 against the estate of 4100 N. High and $559,885.58 against the estate of Northwest. The final meeting of creditors in each estate has been held and this litigation appears to be the only remaining unresolved matter.

Indeed, in the fifth paragraph of each complaint, plaintiff alleged:

"* * * [N]othing further remains to be done by plaintiff in the administration of this case. Plaintiff is unable to make final distribution, however, until the liability of your Trustee, if any, for income taxes as an expense of the administration is determined, and until he may be protected against subsequent action by defendant in attempting to asses [sic] or collect any tax from him which may arise as a direct or indirect result of his activity in bankruptcy in this case."

As is so often the case, the phrasing of the issue clearly delineates the polar positions assumed by the parties. In his brief, plaintiff states:

"The principal issue before the Court is whether or not a trustee of the estate of a bankrupt partnership is required to pay federal income taxes on monies received by him during the course of administration in the nature of rents and interest." [Underlining added.]

In contrast, defendant states:

"The question before the Court is whether the law specifically exempts the plaintiff, trustee, in this case from the assessed post-petition federal income tax liability." [Underlining added.]

The use of the word "estate" both in the Bankruptcy Act (now repealed, but still applicable herein) and in the Internal Revenue Code without precise definition in either statutory setting is at the heart of the issues in these cases. As of the date of the filing of a petition initiating a proceeding under the Bankruptcy Act, title to the property of the bankrupt vests by operation of law in the trustee. *11 U.S.C. § 110a.* A bankruptcy estate thereupon comes into being, whether the bankrupt is an individual, a corporation, a partnership or a limited partnership. A basic issue presented by these cases is whether such bankruptcy estates are estates separately taxable under the Internal Revenue Code. Therefore, we must examine the statutory provisions and accompanying legislative history of the Internal Revenue Code provisions as worded in 1975 and 1976.

Defendant asserts, and the Court agrees, that the rental income collected by the trustee in 1975 in these cases falls within the Code definition of gross income. *26 U.S.C. § 61.* Defendant also asserts that a tax is imposed on the income of each bankruptcy estate by 26 U.S.C. § 641(a) which as worded in 1975 and 1976 stated:

"(a) Application of tax.—The tax imposed by section 1(e) shall apply to the taxable income of estates or of any kind of property held in trust, including—

(1) income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

(2) income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

(3) income received by estates of deceased persons during the period of administration or settlement of the estate; and

(4) income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated."

However, § 641(a) does not itself impose a tax, but only refers to the " * * * tax imposed by section 1(d) * * *." The referenced section as worded in 1975 and 1976 in pertinent part stated:

"There is hereby imposed on the taxable income * * * of every estate and trust <u>taxable under this subsection</u>, a tax determined in accordance with the following table * * *." [Underlining added.] *26 U.S.C. § 1(d).*

The modifying language underlined must have been intended to have some purpose. The apparent purpose is to limit the imposition of the tax so that not every estate and trust is taxable under § 1(d). Unless so read the clause has no meaning at all. Apparently, the language was inserted by the Code amendments of 1969, *P.L. 91–172,* but legislative history fails to explain what was intended by the limiting clause. The only hint found in the Internal Revenue Code itself of what may have been intended is § 641(a) which counsel for the government contends should be broadly construed to include, although not mentioned therein, bankruptcy estates [and, apparently, every estate and trust], citing § 7701(b) of the Code which states:

"The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things <u>otherwise within</u> the meaning of the term defined." [Underlining added.] *26 U.S.C. § 7701(b).*

Counsel for the government makes the statement that " * * * the levying provisions are not in issue here" and contends that the rule of *White v. United States,* 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172 (1938), should be applied to cast upon plaintiff the burden of showing an unequivocal exemption or exclusion from taxation, rather than the rule of *Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917) which held that statutes levying taxes will not be extended by judicial implication beyond the clear import of the language used in the statute, and that doubts must be construed against the government.

However, it appears that the undefined meaning of the limiting clause of § 1(d), wholly incorporated into § 641(a), raises precisely the issue which counsel for the government states " * * * is not in issue here." What is meant by " * * * every estate and trust taxable under [§ 1(d)] * * * " is not well-answered by § 7701(b) which tells us that the word "including" used in § 641(a) " * * * shall not be deemed to exclude other things <u>otherwise within</u> the meaning of the term defined." [Underlining added.] If we accept the contention that § 7701(b) compels the conclusion that a bankruptcy estate [and it should follow—every other kind of estate and trust] was intended to be covered by § 641(a), and hence § 1(d) which imposed the tax, then the limiting clause of § 1(d) is meaningless. Such acceptance would impute to Congress the intention of enacting a statutory provision having no meaning. This we cannot do. Our function is not to ignore statutory language, but to interpret it consistently with the intent of Congress as we may ascertain it.

We find guidance for such statutory interpretation in these words of the Supreme Court:

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute * * *.

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. * * * Frequently, however, even when the

plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 542–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

Recent Congressional hearings relating to the revision of the bankruptcy laws, resulting in the enactment of the new Bankruptcy Code effective October 1, 1979, demonstrate an awareness of the necessity for explicitly distinguishing between decedents' estates and bankruptcy estates. The legislative history to § 727 of the new Bankruptcy Code, *11 U.S.C. § 727,* states:

"'Individual' includes a deceased individual, so that if the debtor dies during the bankruptcy case, he will nevertheless be released from his debts, and his estate will not be liable for them. Creditors will be entitled to only one satisfaction—from the bankruptcy estate and not from the probate estate." *H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6340.*

Such hearings also demonstrate concern for the interrelationship between bankruptcy law and tax law, and an awareness that a clear expression of statutory intent is needed. Legislative history regarding efforts to clarify the interrelationship states:

"From an historical perspective, Congress has taken great care to insure that tax policy will not frustrate the operation of bankruptcy. * * *

"Under present law, the basis for taxing a bankruptcy estate under the IRC is tenuous. Tradition has lumped bankruptcy estates together with decedents' estates under IRC section 641. Any fair-minded individual will readily admit that subchapter J of chapter 1 of the IRC was not designed with the bankruptcy estate in mind." *H.R.Rep. No. 595, 95th Cong., 1st Sess. 274, 275 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6231, 6232.*

Unfortunately, provisions which may have dealt explicitly with federal taxability of bankruptcy estates and with federal tax obligations of bankruptcy trustees in future cases and which were contained in the bills as introduced were deleted before passage of the new Bankruptcy Code. Notwithstanding the hope and expectation of many that Congress would include in the new Bankruptcy Code definitive legislation for guidance in future cases in this unsettled area, it determined that federal taxation matters should be covered by consideration of amendments to the Internal Revenue Code "* * * at the next Congress." *124 Cong.Rec.H. 11,114 (Sept. 28, 1978).*

A new provision in the Bankruptcy Code as enacted did impose upon trustees the duty of making tax returns for bankruptcy estates "* * * [for] the purposes of any State or local law imposing a tax on or measured by income * * *." *11 U.S.C. § 728.* Of course, that provision does not impose the same duty with respect to federal income tax and even had it done so, would be inapplicable to these cases. *P.L. 95–598, § 403(a).*

In determining whether bankruptcy estates were encompassed within the 1975 and 1976 Internal Revenue Code provisions, we are aided by some well-known canons of construction. One such canon, *noscitur a sociis,* has been translated: "Where any particular word is * * * of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words." *Virginia v. Tennessee,* 148 U.S. 503, 519, 13 S.Ct. 728, 734, 37 L.Ed. 537 (1893). As a result, the meaning naturally attaching to the term from its context will be applied. *Id.* Another canon of construction, *ejusdem generis,* has also been adopted by the Supreme Court. *See, Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 88–89, 55 S.Ct. 50, 52, 79 L.Ed. 211 (1934). That canon may be translated: "where, in a statute, general words follow a designation

of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation, and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated." *73 Am. Jur.2d Statutes § 214 (1974).*

■ The application of these canons of construction to the term "estates" as used in 26 U.S.C. § 641(a) demonstrates that the term was not intended to include bankruptcy estates. The defendant improperly seeks to remove the single word "estates" from its context and broadly define it to encompass bankruptcy estates without regard to the language which follows in § 641(a) and in § 642 *et seq.* of Subchapter J, and in total disregard of the limiting clause of § 1(d).

The legislative history to § 641(a) indicates that the classes of income enumerated therein were illustrative of estate and trust income dealt with in that subchapter, that the term "estate" was not all-inclusive, and specifically stated: " * * * the estate of a ward is not a separate taxable entity as is a trust or the estate of a deceased person." [Underlining added.] *H.R. 8300, 83d Cong., 2d Sess. reprinted in [1954] U.S.Code Cong. & Admin.News, p. 4331.*

Nothing in the context of Subchapter J of the Internal Revenue Code suggests that a bankruptcy estate was the kind of estate or trust to which Congress was addressing itself by enactment of Subchapter J. Moreover, the language of § 641(a) will not support defendant's broad interpretation. Subsection (3) of § 641(a) pertains to income received by the estates of deceased persons. Subsections (1), (2), and (4) of § 641(a) all pertain to income which may be accumulated and/or distributed to beneficiaries. The term "beneficiary" is defined in 26 U.S.C. § 643(c), which states:

"(c) Beneficiary.—For purposes of this part [26 U.S.C. §§ 641 *et seq.*], the term 'beneficiary' includes heir, legatee, devisee."

The legislative history to the Internal Revenue Code of 1954 does not clarify that definition, but merely states that "[s]ubsection (c) provides that the term beneficiary includes an heir, devisee, or legatee." *U.S. Code Cong. & Admin.News, supra, at 4335.* As commonly used an heir is defined as " * * * one who succeeds to either real or personal property of a decedent who dies intestate * * *." *Ballentine's Law Dictionary 554 (3d ed. 1969).* A legatee is "[o]ne who takes personal property as beneficiary under a will." *Id. at 722.* A devisee is "[t]he beneficiary named in a devise which in the best legal sense is a testamentary gift of real estate." *Id. at 346.* The common bond to all of those terms is that they involve decedents. Therefore, § 641(a) addresses itself to decedents' estates, not bankruptcy estates.

In reported decisions involving the imposition of tax by § 641(a) upon bankruptcy estates, defendant has frequently cited Rev. Rul. 68–48, 1968–1 C.B. 301. The positions which the Commissioner espoused therein were that bankruptcy estates are separate taxable entities, *id. at 302*, and that "[c]reditors of the estate do not fall within this definition [of beneficiaries. 26 U.S.C. § 643(c).] Therefore, amounts received by the bankrupt's estate which are includible in its income are not deductible under section 661 of the Code when distributed to creditors." *Id. at 303.* Such a position seems to be internally inconsistent. If the term "estate" were to be construed as broadly as suggested by the Revenue Ruling to include bankruptcy estates, then it seems a similar broad construction should be given to the term "beneficiary" to include creditors who ultimately are entitled to receive the income accrued during a liquidation bankruptcy case administration.

Plaintiff's counsel suggests that a distinction made in the Internal Revenue Code between taxability of partnerships and other business entities is applicable here and precludes taxation of 4100 N. High and Northwest. The pertinent section provides:

"A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." *26 U.S.C. § 701.*

238

The legislative history to that section indicates that "the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity." *U.S. Code Cong. & Admin.News, supra, at 4091.* The main distinction between § 701 and its predecessor is that § 701 "expressly states, rather than implies, that the partnership as such is not to be subject to the income tax." *Id. at 4361.* The net result is that the partnership acts as a conduit for the income which is taxed to the partners.

Plaintiff's counsel contends that the conduit concept applicable to non-bankrupt partnerships should apply also to bankrupt partnerships, so that the bankruptcy estates thereof are not taxable as separate entities. Defendant's counsel counters that " * * * once the partnership was terminated by adjudication in bankruptcy it could no longer serve as a conduit for income taxable to its partners. The bankruptcy estate became the taxable entity." The negative implication of such premise is that if the partnership were not terminated by adjudication in bankruptcy, it could continue to serve as a conduit for taxable income, if any, to its partners, and the bankruptcy estate does not become a taxable entity.

■ Chapters 1775 and 1781 of the Ohio Revised Code contain pertinent statutory provisions which apply to partnerships and limited partnerships, respectively. Chapter 1781 does not specifically state what occurs when a limited partnership files a petition in bankruptcy, but since a limited partnership is merely a special type of partnership, *O.R.C. § 1781.01,* the provisions of O.R.C. Chapter 1775 are controlling. The legal effect of an Ohio partnership filing a petition in bankruptcy is the dissolution of that partnership. *O.R.C. § 1775.30(E).* However, the partnership is not terminated on dissolution. The Ohio Revised Code states:

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." *O.R.C. § 1775.29.*

Dissolution is also distinguished from the winding up of the affairs of a partnership, *O.R.C. § 1775.28,* and the statute specifically provides for the winding up of a partnership. *O.R.C. § 1775.36.* The continued existence of the partnership subsequent to the filing of the petition in bankruptcy for purposes of winding up its affairs is recognized in § 5a of the Bankruptcy Act, which states:

"a. A partnership, including a limited partnership containing one or more general partners, during the continuation of the partnership business or after its dissolution <u>and</u> before the final settlement thereof, may be adjudged a bankrupt either separately or jointly with one or more or all of its general partners." [Underlining added.] *11 U.S.C. § 23a.*

Commentators have also recognized that the transfer of a bankrupt partnership's assets to its bankruptcy trustee does not result in termination of the partnership. " * * * While it might seem that a bankrupt partnership terminates under [26 U.S.C.] § 708(b)(1)(A) when it ceases to do business as a result of the transfer of its assets to the trustee, termination apparently does not result until its affairs are completely wound up. *See* Reg. 1.708–1(b)(i)." *McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners, vol. 1, ¶ 9.07[1] n. 147 (1977).*

■ The Court has carefully considered these and other contentions of counsel and is convinced that neither the Bankruptcy Act nor the Internal Revenue Code as worded in 1975 and 1976 imposed or levied federal income tax upon bankruptcy estates of either individuals or partnerships. The Court adheres to its opinion in *Siehl* regarding interpretation of § 641(a) citing: *Reinecke v. Gardner,* 277 U.S. 239, 48 S.Ct. 472, 72 L.Ed. 866 (1928) ["The extension of a tax by implication is not favored."]; *U. S. v. Whitridge,* 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159 (1913); *Smietanka v. First Trust & Savings Bank,* 257 U.S. 602, 42 S.Ct. 223, 66 L.Ed. 391 (1921); and *Ellis v. U. S.,* 416 F.2d 894 (C.A.–6 1969) ["Taxes should be

imposed by Congress and not by the courts. If there is serious doubt as to taxability, as in this case, the doubt should be resolved in favor of the taxpayer."]. *In re Paul W. Siehl,* 2 B.C.D. 248 (1975).

Plaintiff reported no taxable income for either bankruptcy estate on his Form 1041, U. S. Fiduciary Income Tax Return, Exhibit B, basing his conclusion on *In re Siehl, supra.* In *Siehl* we held that the trustee in bankruptcy of a bankrupt individual had no liability for federal income tax. *Siehl* was affirmed, but on the narrow ground that when a trustee liquidates accounts receivable which came into existence prior to the bankruptcy of a cash basis taxpayer, the proceeds of liquidation are not "taxable income of" the bankruptcy estate. *In re Siehl,* No. 55,648 (S.D.Ohio 9–8–76). As affirmed *Siehl* is not dispositive of the issue of federal income tax liability of a trustee in bankruptcy of either a bankrupt individual or partnership which does have income.

■ In this case it is stipulated that the plaintiff-trustee did have income and that he was specifically authorized by order of this Court to operate the businesses of both 4100 N. High and Northwest. Neither of these facts were present in *Siehl,* and although we adhere to the opinion that no provision of the Internal Revenue Code as worded in 1975 and 1976 imposed a tax upon bankruptcy estates as such, we now hold that nonetheless the plaintiff is by virtue of his income producing court authorized operation of the bankrupts' businesses subject to the Federal income tax.

One of the statutes referred to in counsels' briefs is 28 U.S.C. § 960 which states:

"Any officers and agents conducting any business under the authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

Although § 960 does not itself impose a tax, it does reflect congressional intent "that a business in receivership, or conducted under court order, should be subject to the same tax liability as the owner would have been

if in possession and operating the enterprise." *Palmer v. Webster & Atlas Nat'l Bank,* 312 U.S. 156, 163, 61 S.Ct. 542, 545, 85 L.Ed. 642 (1941), reh. den. 312 U.S. 714, 61 S.Ct. 728, 85 L.Ed. 1145.

The Court of Appeals for the Third Circuit paraphrased: "In *Palmer v. Webster and Atlas National Bank* [citation omitted], the Court stated that the purpose of Section 960 was to equalize the competitive situations of operating businesses, be they in bankruptcy or not * * *." *In re I. J. Knight Realty Corp.,* 501 F.2d 62 (C.A.–3 1974).

■ Plaintiff is a court officer who conducted a business during 1975 in each bankruptcy case under authority of this United States Court. He, therefore, competed with other landlords in the same geographical area. Under the plain and unambiguous words of § 960, he is subject to all taxes which would have been applicable to the business if it had been conducted by an individual or corporation. The fact that such businesses were carried on prior to bankruptcy by partnerships seems to us immaterial. The statute covers in all Federal, State and local taxes applicable to conducting any business under court authority; the measure of taxation is not keyed to taxability in the past [in these cases, prior to bankruptcy], but is keyed to the business conducted by the court officer. The test is clearly one of analogy, that is, the court officer is subjected to every tax to which any fictional individual or corporation would have been subjected had the same business been conducted in the same way for the same period with the same results, not by the court officer, but by such fictional individual or corporation. To the extent that such a business operation would have been subjected to any particular tax, so too is the business operation of the court officer.

Therefore, the Court is of the opinion that the plaintiff by seeking, obtaining and exercising authority to operate the businesses of the respective bankrupts herein brought himself within the coverage of

§ 960 and it is immaterial that the Internal Revenue Code as worded in 1975 and 1976 does not itself impose the Federal income tax upon bankruptcy estates as such.

■ Recognizing that the Federal income tax treats individual and corporate taxpayers differently it would seem that § 960 should be construed to permit the plaintiff to limit the extent to which the tax is applicable to his business operations. The plaintiff should have the option of calculating his income tax due, if any, as if the business " * * * were conducted by an individual * * * " *or* as if it " * * * were conducted by * * * [a] corporation." He should then be permitted to select the less burdensome tax consequence, and tender amended returns for the period of his court authorized operations.

At the outset, the Court noted that counsel had indicated by the signed Stipulation of Facts [filed May 17, 1978] their joint intention of submitting these adversary proceedings " * * * for trial upon cross-motions for Summary Judgment." The defendant filed its motion for summary judgment [on July 19, 1978]; the plaintiff did not file a motion for summary judgment and in his reply brief [filed July 24, 1978] expressed a different understanding than that expressed in the signed stipulation on file. It seems to the Court this deviation from the stipulation is immaterial at this point.

Therefore, it is ORDERED that partial summary judgment be granted in favor of the defendant, United States of America, and against the plaintiff, Fred G. Preston, as Trustee in Bankruptcy of 4100 N. High, Limited and of Northwest Business and Professional Center, Limited to the extent hereinabove set forth, and that these adversary proceedings shall otherwise remain pending for such further proceedings as may become necessary upon motion of either party hereto.

Partial summary judgment shall be entered by separate document in accordance with Rule 921 of the Rules of Bankruptcy Procedure.